WALDRON, Administrator, *et al. v.* ZOLLIKOFER.

Where in a suit in equity, brought by the administrator and heirs of the purchaser, to rescind a contract for the sale of real estate, and for damages, on the ground of fraud, which fraud consisted in the respondent's having represented the land to be free from overflow—to be healthy—and that the occupants were not subject to ague or fever, and which fraud was denied in the answer, it appeared in evidence, on the part of the complainants, that the contract was made in May, 1855, and was for about 468 acres of land in a body, on the Maquoketa and Mississippi rivers, of which about 205 acres is bottom, and the balance timber, or bluff, land; that the purchaser, at the same time, bought of respondent some $800 worth of personal property,

Waldron et al. v. Zollikofer.

and for the land, and this property, was to pay $6,000, $1,000 being paid at the time of the contract; that before and during the negotiation for the farm, and at the time of making the contract, the respondent represented that the bottom land had never been overflowed, but once in fourteen years, and that was caused by the breaking away of a mill dam on the Maquoketa; that during that time, neither he nor his family had been sick with the fever and ague; that these statements were made in answer to questions asked him on those subjects; that respondent complained that his neighbors would always tell those wishing to purchase, that his land overflowed, and he knew, and they knew, that it did overflow; that the purchaser was a stranger in the country; that the land does overflow, and has frequently, if not every year, overflowed, for the last fifteen years; and that it is sickly, and respondent's family did suffer with the ague and fever, as have most of the hands working there since the purchase; and where it appeared in evidence on the part of the respondent, that the purchaser made inquiries of the witness for a farm that would answer for stock business; that witness directed him to some two or three, including the respondent's; that the purchaser examined the respondent's farm, and appeared to be well satisfied, as he found water on it, and upland and bottom sufficient for his purpose; that he inquired of witness how much meadow land there was, and how much on the bluffs that he could plow; that the witness and purchaser had several conversations before the purchase, and at one time the witness told him, in answer to a question, that in high water a portion of the land overflowed—that it might overflow once in four or five years, and he inquired if, when it overflowed, it injured the grass; that the purchaser, after examining the place, told witness there was upland sufficient for the sheep business—that there was four or five hundred acres in a body, and that was what he wanted for a range for his stock; and that in the summer after the purchase, the purchaser was plowing in the bottom, when another witness told him it was no use to plow there, for he was there six or seven years before in a boat, catching fish on that ground—that it was overflowed; to which the purchaser replied, that he knew all about it—that he knew how to fix it—he could put in timothy, and when witness should come there again in two years, the witness would see such a difference that he would not know the place; and where the value of the bottom land, if it did not overflow, was estimated at from $25 to $50 per acre, the weight of evidence being at about $35, but subject to overflow, as it was, it was regarded by some witnesses as worthless, and by others, estimated as high as $10 per acre, and the timber or bluff land was valued at from $15 to $20 per acre; and where the finding on the issue of fraud was in favor of the respondent, and the bill was dismissed; *Held*, That the proof was insufficient to overcome the denial of fraud in the answer, and the bill was properly dismissed.

A sound price ordinarily implies that a sound article is to be received in return. On the other hand, the failure to give a sound price, is ordinarily a strong circumstance, but not conclusive, to show that the parties contracted in view of defects, or the actual value of the thing sold.

*Appeal from the Dubuque District Court.*

THIS was a bill in chancery to rescind a contract for the sale of land, and for damages, on the ground of fraud in the procurement thereof. The fraud is alleged to consist in the defendant's having fraudulently and falsely represented the land to be free from overflow—to be healthy—and that the occupants (defendant and his family, for fourteen years) were not subject to ague or fever. All fraud is denied in the answer. The proof shows that the contract was made in May, 1855, and was for about four hundred and sixty-eight acres of land, in a body, on the Maquoketa and Mississippi rivers. Of this, about two hundred and five acres is bottom, and the remaining portion timber, or bluff land. The decedent, at the same time, bought of defendant, some eight hundred dollars worth of personal property; and for the land, and this property, was to pay six thousand dollars—one thousand being paid at the time of the contract. One witness swears, that during the time of negotiation between the parties, defendant said that the bottom land had never been overflowed but once in fourteen years, and that was caused by the breaking away of a mill dam on the Maquoketa; and that during that time, neither he nor his family had been sick with the fever and ague, and this was stated in answer to questions asked him on these subjects, and was some days before the contract was finally concluded. The same representations are sworn to by another witness, to have been made at another time, during the negotiation. At another time, it is shown that defendant complained that his neighbors would always tell those wishing to purchase, that his land overflowed, and that he knew, and they knew, it did overflow.

For the defendant, it is proved by one witness, that in the summer after the purchase, the decedent was plowing in the bottom, and that witness told him it was no use to plow there, for he, witness, was there six or seven years before in a boat, catching fish on that ground; that it was overflowed ;

Waldron et al. v. Zollikofer.

and that the decedent replied, "that he knew all about that —he knew how to fix it—he could put it in timothy;" that when witness "should come there again in two years he should see a difference, that he would not know the place." Another witness swears, that decedent made inquiry of him for a farm that would answer for stock business; that he directed him to some two or three, including the defendant's; that he examined the defendant's, and appeared to be well satisfied, as he found water upon it, and upland and bottom sufficient for his purpose; he also inquired of witness how much meadow land there was, and how much *on the bluffs* of defendant's farm, that he could plow. They had several conversations before the purchase, and one time witness, in answer to questions, told him that in high water a portion of the land overflowed; that it might overflow once in four or five years; and that decedent inquired if, when it overflowed, it injured the grass. After examining the place, he told witness there was sufficient upland for the sheep business; that there was four or five hundred acres in a body, and that was what he wanted for a range for his stock. The testimony also shows that the decedent was a stranger in the country, having been there but some four or five weeks. It is abundantly shown, that the land does overflow, and has frequently, if not every year, for the last fifteen years; and it is also shown to be sickly, and that defendant's family did suffer with the ague and fever, as have most of the hands working there since the purchase. Witnesses vary in their estimate of the value of the bottom land; if it did not overflow, the lowest estimate is $25, and the highest $50 per acre; the weight of evidence being at about $35. Subject to overflow, as it is, the bottom is regarded as worthless by some, and by others valued as high as $10 per acre, the average valuation being about $5; the timber on the bluff land is said to be valuable, and valued at from $15 to $20 per acre. This is the substance of the whole proof bearing on the question of fraud. The issue was found in the court below, in favor of defendant, and plaintiff appeals.

*Smith, McKinlay & Poor*, for the appellant.

*Wiltse & Blatchly*, for the appellee.

WRIGHT, C. J.—We are not inclined to disturb the decree. We have no hesitation in finding every issue in favor of the plaintiffs, except perhaps the most material one, and that is whether defendant did falsely and fraudulently make the representations charged. We have no doubt but the land does overflow, so as to greatly depreciate what would otherwise be its value. We are equally well satisfied, that the place is sickly, and that both of these facts were known to the defendant. And if the fraudulent representations were sufficiently proved, we would unhesitatingly grant the relief asked.

When we consider, however, that the answer under oath unequivocally denies this charge, and that such answer must be overcome by an amount of proof well understood in chancery practice, and which we need not here state, we are constrained to hold that the proof falls short of this requirement, and the bill must be dismissed. Two witnesses, it is true, swear quite positively to the representations, and a third speaks of a conversation which tends to show a desire or intention on the part of the defendant, to dispose of his place as one not subject to overflow. The witnesses for the defendant do away with much of this testimony, where they speak of the purchaser, acknowledging that he knew all about it, and inquiring for a stock farm; and as to how much of this land could be put in meadow, and how much of the bluff could be plowed; as also of his speaking before the purchase, of the overflow, and there being enough of the upland for the sheep business. But if the case stood alone upon this testimony, we should still find for the plaintiff. There is a circumstance in the case, however, conclusively shown, which to our mind must decide it for the defendant. We allude to the price paid, compared to the actual value of the land, if it did not overflow. Deducting from the $6,000, the price to be paid, $800, for the personal property,

it will be found that the whole land was estimated at a fraction over $11 per acre. Estimating the timber or the bluff land to contain two hundred and sixty-three acres, and valuing it at $15 per acre, it would be worth, . $3,945

Add the personal property, . . . . . 800

$4,745

and we have $1,255, or a fraction over $6 per acre, paid for the bottom land. If we increase the value of the timber land (as we might fairly do, under the testimony), we in the same proportion lessen the amount paid, or probably paid, for the bottom land. Now, if this bottom land was, as is claimed to have been represented, not subject to overflow or sickness, it was worth, according to the testimony, about $35 per acre, and thus the whole tract and personal property would, in fact, have been worth near twelve thousand dollars, instead of the amount agreed to be paid. We ask, then, whether the contract price does not conclusively show that it was bought, not as land free from overflow, but as land subject to overflow, and therefore of less value? And we also inquire, whether it is not as conclusively shown, that the whole tract is worth about the sum paid, or to be paid, for it? If it was shown that a sound price was paid, the case would have been entirely different. A sound price ordinarily implies that a sound article is to be received in return. And on the other hand, the failure to give a sound price is ordinarily a strong circumstance (not conclusive, it is true), to show that the parties contracted in view of defects, or the actual value of the thing sold. We are not satisfied that the fraud is sufficiently substantiated, and the decree is therefore affirmed.