NOVEMBER TERM, 1890.        229

The Louisville, New Albany and Chicago Railway Company *v.* Nitsche.

No. 14,550.

## THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY *v.* NITSCHE.

RAILROAD.—*Setting Out Fire on Right of Way.*—Where a railroad company in a season of great drouth sets out fire on the right of way, which extends over beds of turf or peat, the same material forming the surface of the body of adjoining lands, it is guilty of a positive wrong, and not of mere passive negligence, and is liable for loss resulting to adjacent owners.

SAME.—*Fire Spread by Means of Turf.—Liability of Company.*—Where the fire so set out, although the blaze and flames were extinguished, remained smoldering in the turf, and, kindled again into flames by an ordinary wind, spread to the land of an adjoining owner, thence to that of his neighbor, and still smoldering in the turf was carried by an ordinarily strong wind to the land of another, the company is liable for the loss suffered by such person. *Pennsylvania Co.* v. *Whitlock,* 99 Ind. 16, distinguished.

From the Lake Circuit Court.

*G. W. Friedley* and *E. C. Field,* for appellant.

*J. Kopelke,* for appellee.

ELLIOTT, J.—Gathered and grouped in a form sufficiently full and clear to exhibit the questions of law which arise in this case, the facts, as they appear in the special finding, may be thus stated : The appellee is the owner of lands used for ordinary farming and grazing purposes adjoining the appellant's railroad.   On the 19th day of July, 1887, the section hands of the appellant, by order of its road-master, set fire to grass, weeds and other combustible materials on the appellant's right of way, a short distance from the appellee's land, and burned off a great part of the space occupied by the track.   The object of the section men was to remove from the right of way all combustible materials.   At the time the fire was set out it was very dry, no rain having fallen for more than four weeks.   The section men extinguished all the blaze and flame caused by the fire set out by them, but fire remained in some pieces of turf which had been ignited,

and although there was no flame, the fire was still alive and smoldering. These pieces of burning turf were cast back upon the space which had been burned over. The appellant's right of way extended over beds of turf or peat, and the same material formed the surface of the body of adjoining lands, and also of the appellee's land, which was adjacent to the right of way of the appellant. Turf, or peat, when dry, will ignite and burn to the depth at which it ceases to be dry. On the 22d day of July, 1887, the wind shifted to the northeast, and blew fresh, but not unusually strong for the locality. The fire smoldering in the pieces of turf cast back upon the track was kindled into a flame, and, passing from the right of way, communicated fire to the land owned by Hawkinson, burned there for a time, but finally all the fire that was visible was fought out and extinguished by persons residing in the neighborhood. The fire had, however, communicated with the turf on Hawkinson's farm, where it remained dormant until the morning of the 23d day of the month named; on that day it broke out and spread · over the land of Schaffer. For the second time neighbors extinguished such flame as was visible, but the turf still held fire, and burned slowly. On the 24th day of the same month the wind shifted to the south, and the fire from Schaffer's land was communicated to the turf, or peat, on the appellee's farm. For the third time such fire as could be seen or reached was extinguished by persons residing in the neighborhood, assisted by the employees of the appellant, but still the fire remained in the turf, smoldering but not extinguished. On the 2d day of August the wind increased, but it did not blow stronger than is usual in the locality, and again the fire smoldering in the turf on appellee's farm broke out. It ran over ten acres, and caused the appellee serious loss. "By reason of the dryness of the season and the character of the soil," says the trial court in its finding, "it was negligence on the part of the defendant to set fire to and burn off the

right of way at the place and time where the same was so burned."

An essential and ruling element of this case is, that it was a tortious act to set out the fire which caused the plaintiff's injury.    It was something more than culpable negligence to start a fire on a bed of turf, or peat, in a season of great drouth, when for weeks no rain had fallen and the ground was parched and dry.    The act of the defendant in setting out a fire at such a place and under such conditions was a positive wrong, for the law forbids that one person should put the property of another in jeopardy by such an act.    In degree, only, is there a difference between such a case as this and one in which a person kindles a fire near a train of gunpowder leading to a magazine filled with explosive substances.    In essence the case is the same as that of one who builds a fire upon materials that will ignite and continue burning in a place where all surrounding materials are of the same combustible character.    If a person should kindle a fire in a great heap of inflammable paper, surrounded on every side by other like heaps, with the line of communication between them direct and unbroken, no one, we venture to say, would hesitate to declare that he by whom the fire was kindled was guilty of a positive tort, and not of mere passive negligence.

A railroad company has a right to remove combustible material from its right of way, and ordinarily it may not be negligence to employ fire for that purpose; but where the conditions are such as to put in great peril adjacent property fire can not be rightfully used for such a purpose.    Fire is a necessary agent, in common use in life, and from its employment, under ordinary conditions, negligence or wrong is not necessarily inferable; but it may be so used as to make the person using it guilty of a tortious act.    The doctrine we assert was declared in the early years of the common law.    *Smith* v. *Frampton*, 2 Salk. 644; *Tubervil* v. *Stamp*, 1 Salk. 13; *Anonymous*, Cro. Eliz., 10.

The rule has continued in unbroken force through all the ages of the jurisprudence of the English speaking nations. *Catron* v. *Nichols,* 81 Mo. 80; *Miller* v. *Martin,* 16 Mo. 508; *Clark* v. *Foot,* 8 Johns. 421; *Barnard* v. *Poor,* 21 Pick. 378; *Hanlon* v. *Ingram,* 3 Iowa, 108; *Fahn* v. *Reichart,* 8 Wis. 105; *Filliter* v. *Phippard,* 11 Q. B. 347; *McKenzie* v. *McLeod,* 10 Bing. 385; *Cleland* v. *Thornton,* 43 Cal. 437; *Collins* v. *Groseclose,* 40 Ind. 414. A lawful act may be done in such a mode, or under such circumstances, as to make it wrongful, and where fire is used in an improper manner, or under circumstances such as inexcusably imperil surrounding, or adjacent property, the person so using it is a wrongdoer. *Gagg* v. *Vetter,* 41 Ind. 228; *Freemantle* v. *London,* etc., *R. W. Co.,* 2 F. & F. 337; *Aldridge* v. *Great Western, etc., R. W. Co.,* 3 Man. & G. 515; *Vaughan* v. *Menlove,* 3 Bing. (N. C.) 468; *Crogate* v. *Morris,* Brownlow & G. 197; *Higgins* v. *Dewey,* 107 Mass. 494. In a series of cases our court has held that railroad companies are not liable for setting out fire on their own right of way, but are liable for negligently suffering it to escape and injure adjacent property. *Pittsburgh, etc., R. W. Co.* v. *Hixon,* 79 Ind. 111, and cases cited; *Pittsburgh, etc., R. W. Co. Jones,* 86 Ind. 496; *Brinkman* v. *Bender,* 92 Ind. 234; *Louisville, etc., R. W. Co.* v. *Ehlert,* 87 Ind. 339; *Indiana, etc., R. W. Co.* v. *Adamson,* 90 Ind. 60; *Indiana, etc., R. W. Co.* v. *McBroom,* 91 Ind. 111; *Wabash, etc., R. W. Co.* v. *Johnson,* 96 Ind. 40; *Pittsburgh, etc., R. W. Co.* v. *Hixon,* 110 Ind. 225. Within the principles established by these authorities the person whose land was first reached by the fire would undoubtedly be entitled to recover, for the use of fire under the circumstances existing at the time the first was set out by the appellant was wrongful, and the conditions were such as to make it reasonably certain that it would leave the appellant's right of way and follow the continuous beds of peat, or turf, upon which the track was laid, and which extended on every side of it, covering many acres. That the fire would escape from the right of way was so

probable that the appellant must be held responsible for what did actually occur, for all persons are required to foresee and provide against the probable consequences of their acts. Unusual and improbable results are not to be anticipated, but usual, or probable, ones must be. *Billman* v. *Indianapolis, etc., R. R. Co.,* 76 Ind. 166 ; *Dunlap* v. *Wagner,* 85 Ind. 529 (44 Am. Rep. 42) ; *Wabash, etc., R. W. Co.* v. *Locke,* 112 Ind. 404 ; *Louisville, etc., R. W. Co.* v. *Wood,* 113 Ind. 544 (556),and cases cited ; *Clore* v. *McIntire,* 120 Ind. 262 (265); *Cincinnati, etc., R. R. Co.* v. *Cooper,* 120 Ind. 469 (472) ; *Terre Haute, etc., R. R. Co.* v. *Clem,* 123 Ind. 15 ; *Lane* v. *Atlantic Works,* 111 Mass. 136 ; *Hill* v. *Winsor,* 118 Mass. 251.

The only difficulty which this case presents grows out of the fact that the fire crossed the land of Hawkinson and of Schaffer before reaching that of the appellee, but the difficulty will be found, upon scrutiny and analysis, to be apparent rather than real. Its apparel of seeming strength drops when the tests of reason and authority are applied, for neither upon principle nor authority can it be justly concluded that the injury was so remote as to defeat a right òf recovery. As has been shown, the act of setting out a fire at such a season and on an inflammable and continuous bed of peat was a positive wrong and not mere passive negligence, so that the case falls within the rule declared in the famous " Squib case " which our own and other courts have so often and so strongly approved. *Scott* v. *Shepherd,* 2 W. Black. 892 ; *Billman* v. *Indianapolis, etc., R. R. Co., supra; Dunlap* v. *Wagner, supra; Terre Haute, etc., R. R. Co.* v. *Buck,* 96 Ind. 346 (49 Am. R. 168) ; *Louisville, etc., R. W. Co.* v. *Falvey,* 104 Ind. 409 ; *Indianapolis, etc., R. W. Co.* v. *Pitzer,* 109 Ind. 179 (188) ; *Ohio, etc., R. R. Co.* v. *Hecht,* 115 Ind. 443, and cases cited ; *Louisville, etc., R. W. Co.* v. *Snyder,* 117 Ind. 435 ; *Denver, etc., R. W. Co.* v. *Harris,* 122 U. S. 597 ; *Lake Shore, etc., R. W. Co.* v. *Rosenzweig,* 113 Pa. St. 519 ; Addison Torts, 42 ; Cooley Torts, 70 ; Bishop Non-Contract Law, sec-

tion 45; 2 Shear. & Redf. Neg. (4th ed.), section 742. The wrong of the appellant put in motion the destructive agency, and the result is directly attributable to that wrong. In this instance cause and effect are interlinked; there is no break, the chain is perfect and complete. The line of connection is as continuous and almost as closely woven into unity as the beds of peat which the railroad traverses and which lie in one vast body along the right of way. Firing one part of such a body of inflammable material when it was parched by the long drouth was, in legal contemplation, firing it all, for the spread of the fire was so probable that it was the duty of the appellant to foresee the result and not set out the fire. If a man should set fire to a rope saturated with inflammable oil leading from house to house and the fire, following the rope, should destroy a third house, we suppose it to be perfectly clear that he would be liable to the owner of that house, and what is true of the imaginary case is true of the actual one, for the line of causation is even more complete and perfect in the latter than in the former. We discriminate this case from the case of *Pennsylvania Co.* v. *Whitlock*, 99 Ind. 16. There is solid reason for discriminating between the two cases. In the one there was mere passive negligence, in the other a positive wrong. There is also another element of difference, for the case referred to proceeds upon the theory that there was an intervening agency and a break in the line of causation, while here no such theory can be framed without violence to the facts since the fire followed the continuous inflammable bed of peat upon which it was ignited by the appellant. It must, indeed, be owned that the case cited carries the doctrine to the utmost verge. The doctrine can not, at all events, be extended, for even limiting it to the facts of the particular instance then before the court the decision is in conflict with the decisions of the Supreme Court of the United States, with those of almost all of the State courts, and it is at variance with the views of the standard text-

writers. *Milwaukee, etc., R. W. Co.* v. *Kellogg*, 94 U. S. 469; Shear. & Redf. Neg. (4th ed.) section 666, and notes; Cooley Torts, 96, and note; Bishop Non-Contract Law, section 45; 8 Am. & Eng. Encyc. of Law, 11, and cases cited.

It is difficult, if not impossible, to find a substantial reason for holding that an ordinary wind is an independent intervening agency, for what occurs in the usual course of nature, and is not abnormal or extraordinary, can not be regarded as an independent agency. We think it very clear, that if a man should erect walls too weak to withstand the force of ordinary winds, and they should fall upon and crush an adjoining building, he could not defeat the claim of the owner of the ruined building upon the ground that the walls fell before an ordinary wind. Between the supposed case and the real one before us, no difference in principle can be discerned by the keenest vision. Extraordinary winds may justly be regarded as independent intervening agencies; but not so winds which are usual, and prevail without disturbing the normal condition of nature. One who is himself without fault has, in justice and common fairness, a right to recover from one who has caused him loss by a tortious act, although an ordinary natural occurrence entered into the chain of events which culminated in the loss. It is, in truth, impossible to conceive a case wherein loss from fire can happen wholly independent of natural causes. Fire will not burn without air, and yet no one will be bold enough to assert that because this natural agency enters into every conflagration, therefore, the wrong-doer is absolved from responsibility.

It is very seldom that any case arises in which some break between cause and effect is not discernible upon rigid scrutiny and by captious refinement, but the law is a practical science, and repudiates subtle refinements and speculative inquiries. It will not sacrifice substantial rights to such impracticable processes, but will reject them to make way for practical justice. Recondite discussions of efficient cause, plurality

of causes and kindred topics, are for the metaphysician and the speculative philosopher, not the practical lawyer or judge. In the ably reasoned opinion pronounced in the case of *Milwaukee, etc., R. R. Co.* v. *Kellogg, supra,* the Supreme Court of the United States unanimously declared that " In a succession of dependent events an interval may always be seen by an acute mind between a cause and its effect, though it may be so imperceptible as to be overlooked by a common mind.    Thus, if a building be set on fire by negligence, and an adjoining building be destroyed without any negligence of the occupants of the first, no one would doubt that the destruction of the second was due to the negligence that caused the burning of the first.    Yet in truth, in a very legitimate sense, the immediate cause of the burning of the second was the burning of the first.    The same might be said of the burning of the furniture in the first.    Such refinements are too minute for rules of social conduct.    In the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding, and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time."    Discussing the same general principle in another case, that high tribunal said : " In the sense of an efficient cause, *causa causans,* this is no doubt strictly true ; but that is not the sense in which the law uses the term in this connection.    The question is, was it *causa sine qua non ,* a cause which, if it had not existed, the injury would not have taken place, an occasional cause? and that is a question of fact, unless the causal connection is evidently not proximate." *Hayes* v. *Michigan Central R. R. Co.,* 111 U. S. 228.

In the case of *Insurance Co.* v. *Boon,* 95 U. S. 117, the court said : " The question is not what cause was nearest in time or place to the catastrophe.    That is not the meaning

The Louisville, New Albany and Chicago Railway Company v. Nitsche.

of the maxim *causa proxima, non remota spectatur."* In the same case the court quoted with approval from the case of *Brady* v. *Northwestern Ins. Co.*, 11 Mich. 425, the following statement of the law : "That which is the actual cause of the loss, whether operating directly, or by putting intervening agencies—the operation of which could be reasonably avoided—in motion, by which the loss is produced, is the cause to which such loss shall be attributed."

In almost every branch of the law may be found cases, ancient and modern, asserting the general doctrine outlined in the decisions from which we have quoted. Many of the cases we have already cited assert this general doctrine, and to them may be added : *Omslaer* v. *Philadelphia Co.*, 31 Fed. R. 354 ; *Lund* v. *Tyngsboro*, 11 Cush. 563 ; *Louisiana, etc., Ins. Co.* v. *Tweed*, 7 Wall. 44 ; *Butler* v. *Wildman*, 3 B. & A. 398 ; *Barton* v. *Home Ins. Co.*, 42 Mo. 156 ; *Marcy* v. *Merchants' Mut. Ins. Co.*, 19 La. Ann. 388 ; *Ring* v. *City of Cohoes*, 77 N. Y. 83 ; *Ehrgott* v. *Mayor, etc.*, 96 N. Y. 264.

In speaking of the cases of *Ryan* v. *New York Central R. R. Co.*, 35 N. Y. 210, and *Pennsylvania R. R. Co.* v. *Kerr*, 62 Pa. St. 353, which declare a doctrine antagonistic to that held by the Supreme Court of the United States, an able lawyer, John D. Lawson, says : "For they are not only opposed to all the English decisions, to every subsequent American case, but to the later adjudications of the very States in which they were decided." In support of his statement Mr. Lawson cites a great number of cases. 4 Southern Law Rev. 760, 761. Very much the same statement was made by Judge Cooley in his work on Torts, to which we have already referred, and his statement is quoted in *Billman* v. *Indianapolis, etc., R. R. Co., supra.*

Following maxims with rigid strictness is a perilous proceeding. They are scant covers for great principles, and are sometimes as misleading as the wise saws or musty proverbs of a village oracle. It is idle to expect a terse maxim to adequately express a great principle ; the most it can ordi-

narily do is to suggest the principle, but even so much as that it can only do in shadowy outline. "Legal maxims," it has been said, "are convenient currency, but they require the test, from time to time, of a careful analysis." "It is hardly fair, by the way," said an eminent English lawyer, "to find fault with a maxim for its brevity, though brevity should make us beware." 5 Law Quarterly Rev. 444.

Mr. Townshend says: "We believe that not a single law maxim can be pointed out which is not obnoxious to objection." Ram Legal Judgments, 45.

These are echoes from the opinions of the judges who have frequently shown the folly of depending too much on maxims. *Black* v. *Ward*, 27 Mich. 191 (15 Am. Rep. 171); *Thurston* v. *City of St. Joseph*, 51 Mo. 510 (11 Am. Rep. 463); *Bonomi* v. *Backhouse*, 27 L. J. N. S. 378.

It is certainly true that the court which follows strictly and without expansion the maxim, *causa proxima, non remota spectatur*, will go so far astray as to be unable to deal out justice to deserving suitors. But no court is bound to "stick in the bark" of a maxim; on the contrary, it is its duty to ascertain and give effect to the spirit of the principle which the maxim dimly indicates but does not fully express. In this instance, the spirit of the principle, of which the maxim quoted is a glimmering outline, requires that it should be adjudged that the appellant shall make good to the appellee the loss sustained by him from its tortious act.

Judgment affirmed.

Filed Dec. 9, 1890.