The Union Pacific Railway Company v. Eli McCollum.

No. 61.

1. Prairie Fire — *Liability for Negligence.* One who negligently sets out a prairie fire which causes the destruction of the property of another is liable for the injury sustained, when it is such as reasonably should have been foreseen as the natural and probable consequence of the negligent act.

2. ——— *Liability of Railroad—Independent Intervening Agency.* A fire negligently set from a passing railroad-train, after running a short distance, was, as supposed, subdued and extinguished by section men, except in some burning haystacks, from which further damage was not apprehended. The next day a moderately strong wind, but which was neither unusual nor extraordinary, carried the fire from the stacks into the prairie-grass 80 or 90 feet therefrom, and thence upon the plaintiff's premises, three or four miles distant. *Held,* That such wind is not such

an independent intervening agency as can be said to be the proximate cause of the plaintiff's damage, so as to relieve the railway company from liability for negligently permitting the fire to escape from its engine.

3. ———— *Fire-Guards — Contributory Negligence.* It cannot be held, as a matter of law, that one living on a prairie farm, four miles from a railroad, with intervening public highways and cultivated farms, is guilty of contributory negligence in not surrounding his premises with fire-guards such as are commonly regarded as sufficient to protect them from prairie fires.

MEMORANDUM.—Error from Trego district court; STEPHEN J. OSBORN, judge. Action brought by Eli McCollum against The Union Pacific Railway Company to recover damages caused by fire. Judgment for plaintiff. Defendant brings the case here. Affirmed. The material facts are stated in the opinion, filed January 9, 1896.

The statement of the case, as made by GARVER, J., is as follows:

On the 14th day of July, 1892, Eli McCollum commenced this action in the district court of Trego county against The Union Pacific Railway Company, to recover the sum of $765.65 and attorney's fees, for damages alleged to have been sustained from a fire caused by the negligence of the railway company in the operation of one of its trains, on the 27th day of March, 1892. The fire was set out between two and three o'clock in the afternoon of March 27, and burned north through the prairie-grass about three-quarters of a mile, and into two stacks of hay. At this point the fire was subdued and extinguished, with the exception of the burning stacks, which were left with the supposition that no further damage was to be apprehended. The next forenoon, about 11 o'clock, the wind carried the fire from the stacks, across a burned space of about 80 or 90 feet, into the dry prairie grass,

and, in a short time, having traversed the intervening distance of three or four miles, it reached McCollum's farm and did the damage complained of.   The jury returned a general verdict for the plaintiff for $687.32 and $50. attorney's fees ; they also made the following special findings of fact :

"1.   Did not the fire start near the railroad track of defendant and on the north side thereof, about two miles east of Ogallah, on the afternoon of March 27, 1892?   Ans.   Yes.

"2.   Did not such fire destroy Mr. Ridgway's stacks and burn beyond them?   A.   Yes.

"3.   To what distance north of Mr. Ridgway's stacks did the fire burn?   A.   From 84 to 90 feet, on the first day's fire.

"4.   Did not defendant's section men, assisted by Mr. Ridgway and other farmers of the neighborhood, put out such fire after it had burned such distance beyond the haystacks?   A.   They did not.

"5.   How wide was the space burned around these haystacks at the narrowest place?   A.   From 84 to 90 feet, on the first day's fire.

"6.   Did not the parties engaged in extinguishing said fire consider it had been entirely put out, except what may have been left in the stacks, when they left it in the evening?   A.   They did."

"8.   Was not the ground surrounding the haystacks burned off clean, and was not a space on the north side of the stacks burned clean from the stack to the edge of the grass?   A.   Yes.

"9.   Were not the stacks about three-fourths of a mile north of the track?   A.   Yes."

"11.   Was there not very little wind blowing on the evening of March 27, 1892?   A.   Yes.

"12.   Did not the wind begin blowing very hard during the forenoon of March 28?   A.   Medium strong.

"13.   Where did the fire which burned plaintiff's property on the 28th of March, 1892, originate?   A. On company's right of way on the 27th of March, 1892.

21—2 APP.

"14. Did the fire which destroyed plaintiff's property come from the stacks above mentioned? A. Yes.

"15. If you answer the last question in the affirmative, then state whether or not sparks were carried by the very high wind then prevailing across the burned space from the stacks to the grass on the north of them. A. They were carried by a medium high wind.

"16. Was not the plaintiff's property destroyed by the fire started on the 28th of March? A. It was destroyed by the continuation of the fire of the 27th of March, 1892."

"24. What hour of the day did the fire begin burning in the grass on the 28th day of March? A. About 11 o'clock A. M."

The motion of the railway company for judgment on the special findings of fact was overruled, and judgment entered on the verdict in favor of the plaintiff.

*A. L. Williams, N. H. Loomis,* and *R. W. Blair,* for plaintiff in error.

*Jno. E. Hessin,* and *Lilla Day Monroe,* for defendant in error.

The opinion of the court was delivered by

GARVER, J. : No question is raised in this court as to the negligent setting out of the fire by the railway company on March 27. The principal contention of plaintiff in error is that the fire set out by the train on that day was not the proximate cause of the injury complained of, but that such injury was directly caused, on the following day, by the intervening agency of a high wind. This contention is thus stated in the brief of plaintiff in error :

"If the Sunday fire was started by an engine, and had burned continuously until it reached plaintiff's

property, under the decisions of the supreme court of
this state there would be no question about the lia-
bility of the company; but the fire having been ex-
tinguished on Sunday evening, and the premises left
in what was considered by those in a position to know
a safe condition, and in such a condition that, but for
the high wind the next day, the property of plaintiff
would not have been destroyed, changes the case en-
tirely.    It is plain from the evidence and is settled by
the findings, that if it had not been for the wind pre-
vailing Monday morning sparks would not have es-
caped from the stacks across the burnt space and
started a new fire in the standing grass."

We are unable to distinguish this case on principle
from *A. T. & S. F. Rld. Co. v. Stanford*, 12 Kan. 354;
*A. T. & S. F. Rld. Co. v. Bales*, 16 id. 252; and *C. R. I. &
P. Rly. Co. v. McBride*, 54 id. 172.    In those cases the
supreme court fully and clearly discussed similar ques-
tions as to proximate and remote causes, and established
precedents which inevitably lead us to but one conclu-
sion.    True, in neither of the cases referred to was there
such an intermission in the progress of the fire as existed
in this case — the burning there being, in a sense, con-
tinuous.    Yet, in no such case is there a simultaneous
burning.    The fire is communicated from one object
to another, whatever the size and nature of such ob-
jects may be, with some interval of time between the
burning of the different objects.    In dry prairie-grass
and before a brisk wind, a fire may sweep over miles
of territory in a very short time; or, again, if the
conditions are not so favorable, it may linger and
hesitate and almost die out, moving with dilatory
steps until it makes a final destructive leap.    When
there is this succession of causes and effects, it is
difficult to fix any definite limit which shall mark the
dividing line between causes which are proximate
and those which are remote, as connected with sub-

sequent events. The distinction cannot be made by any mere reference to time or distance. In case a building is negligently set on fire, and the flames are thereby communicated to an adjoining one, the burning of the first is the immediate cause of the destruction of the second; yet, as is well settled, the negligent act by which the fire was communicated to the first must be held to be, in law, the proximate cause of the final effect—the burning of the second building. In such case, is it of any importance, in determining legal liability, that the first building was burning an hour, or six or more hours, before the fire was actually communicated to the second? Are the legal consequences which follow from the original wrongful act avoided by the efforts made by the wrong-doer, after the starting of the fire, to prevent its spreading? Is it a legal excuse or justification for the wrong-doer to say, that if the wind had not been blowing in a particular direction, or had not been blowing at all, the damage would not have been done? These and kindred questions must be answered in the negative. The main inquiry in all such cases is : Is the one who is charged with the original wrongful act responsible for the existence of the fire which caused the damage, and.was it a result which might have been foreseen, at the time of the commission of the negligent act, as its natural and probable consequence? What the answer to this inquiry should be is largely a question of fact, and the trier of the facts must say what are proximate and what are remote causes in view of the peculiar circumstances of each case. (*Railway Co. v. Kellogg*, 94 U. S. 469 ; *Fent v. Railway Co.*, 59 Ill. 349 ; *Railroad Co. v. Hope*, 80 Pa. St. 373.)

Counsel for plaintiff in error lay much stress upon

the fact found by the jury in the seventh special find-
ing of facts, that the section foreman and others who
were engaged in putting out the fire thought that it
was entirely safe to leave the burning stacks on the
evening of the 27th, and reasonably supposed there
was no danger of the fire being again communicated ·
to the prairie.   The fact is, however, it was not safe,
as is shown by what occurred the next day, when the
fire was readily carried from the burning stacks to
the prairie-grass by a wind, which was neither un-
usual nor extraordinary.   Had such wind sprung up
immediately after the fire, except that in the stacks,
had been extinguished, and had the flames been
thereby again kindled in the dry grass, there would
be little room for any controversy about intervening
causes.   By the fire being lodged and detained for a
time in the stacks, there was a change or break in
the succession of events, but was there the interven-
tion of a new and independent cause?   Liability does
not arise in this case from subsequent negligent watch
or care.   The negligence consisted in letting the fire
escape in the first place from the engine.   Neither is
it a question as to what would reasonably have been
foreseen as the natural and probable consequence of.
leaving the fire in the burning stacks.   That has noth-
ing to do with a liability which exists, if at all,
because of the first wrongful act of the company neg-
ligently setting out the fire.   Such liability cannot be
affected by subsequent efforts to restrain and control
the devastating force thus let loose.

It was for the jury to say whether it was reasonable
to expect, as the natural and probable consequence of
setting a fire in the dry grass, that it would sweep
over the adjoining country with more or less rapidity,
consuming what came in its way, and yielding to the

influences of the winds which were then usual and common. Though the subduing of the fire and its stopping in the stacks 16 or 17 hours were events not foreseen, yet it is not unreasonable to say it could have been foreseen, as the natural and probable consequence of setting the fire, that it would burn over and devastate this very territory.

The jury in this case have found that it was only a "medium strong" wind which carried the fire from the stacks into the grass. As courts may take judicial notice of what is within the experience and knowledge of all men, it might probably be said, without calling for evidence of the fact, that "medium strong" winds are among the natural and reasonable occurrences in western Kansas in the month of March. However that may be, the evidence clearly shows that the wind on March 28, 1892, was not unusual nor extraordinary in that locality. One setting out a fire on the prairie is bound to take into consideration any such merely natural occurrences. If the winds did not fan the flames and sweep them with such destructive and often uncontrollable force, prairie fires would not leave so many blackened ruins in their paths. But it cannot be said in such cases, that a wind which is neither unusual nor extraordinary is an independent intervening cause of the spread of the flames. It is simply a natural force which is exerted upon almost every fire, as a contributing cause, to the doing of more or less damage. When two causes combine to produce an injury, both of which are proximate in their character, the one being the result of culpable negligence and the other an occurrence for which neither party is responsible, the negligent party is liable, if the injury would not have been sustained but for such negligence. If there had been the inter-

vention of such an extraordinary force as a whirlwind, as was the case in *Marvin v. Railway Co.*, 79 Wis. 140, a different question would be presented. The independent intermediate agency which may become the proximate cause, and thus stand between the injurious results and a prior wrongful act, must also be a force whose intervention or contribution in bringing about the results could not have been foreseen by the exercise of reasonable diligence on the part of the wrongdoer. This cannot be said as to such a wind as occurred in this instance. Upon principle and authority, we think the negligent setting out of the fire by the railroad company on the 27th must be held to be the proximate cause of the plaintiff's loss. In addition to the cases cited and commented upon by the supreme court in the Stanford and McBride cases which bear upon this question, we refer to the following : *Poeppers v. Railway Co.*, 67 Mo. 715 ; *Railway Co. v. Nitsche*, 126 Ind. 229 ; *Railway Co. v. Williams*, 131 id. 30 ; *Railway Co. v. Kellogg*, 94 U. S. 469.

The facts in *Railway Co. v. Williams* and *Railway Co. v. Nitsche* are similar to those in this case. In each of those cases, which were actions for damages sustained by fires negligently set out by the railway company, several days intervened between the time when the fire was set out and the time when the damage was done ; the fire in the meantime having been subdued and extinguished, as was supposed, and again breaking out. In the case of Nitsche, the fire was set out on the right of way of the railway company on July 19, and was under control and supposed to have been extinguished several times thereafter, the smouldering fire being as often fanned into flames by the wind, until, on August 2, it again broke out and burned the property of plaintiff. In both cases, the

wrongful act of the railway company in permitting the fire first to escape was held to be the proximate cause of the final injury. There, as in this case, had it not been for the wind, the fire, probably, would not have again broken out after it had been subdued, and on that ground it was contended that the wind was an intervening agency and the proximate cause of the plaintiff's damage. Considering this claim, it is said, in the opinion in *Railway Co.* v. *Nitsche:*

"It is difficult, if not impossible, to find a substantial reason for holding that an ordinary wind is an independent intervening agency; for what occurs in the usual course of nature, and is not abnormal or extraordinary, cannot be regarded as an independent agency. . . .  Extraordinary winds may justly be regarded as independent intervening agencies; but not so winds which are usual, and prevail without disturbing the normal conditions of nature. One who is himself without fault has, in justice and common fairness, a right to recover from one who has caused him a loss by a tortious act, although an ordinary natural occurrence entered into the chain of events which culminated in the loss. It is, in truth, impossible to conceive a case wherein loss by fire can happen wholly independent of natural causes. Fire will not burn without air, and yet no one will be bold enough to assert that, because this natural agency enters into every conflagration, therefore the wrongdoer is absolved from responsibility."

It is next contended that the plaintiff was guilty of contributory negligence and, therefore, not entitled to recover, even admitting that the negligence of the railway company was the proximate cause of his loss. We think this contention cannot be maintained. It is founded upon the mere fact that the plaintiff had not protected his premises by a sufficient fire-guard. The evidence shows that the plaintiff lived about four miles

from the railroad, with intervening public highways and cultivated farms.   He had provided some protection by fire-guards around his farm, but nothing that was adequate.   While it is the duty of one to use reasonable efforts to prevent or lessen an injury, even in case it is threatened because of the wrongful act of another, no such duty is imposed to protect one from the effects of the wrongful acts of others which are only possible but are not probable or imminent.   In this case, as in most cases, the existence of contributory negligence on the part of the plaintiff was a fact to be determined by the jury, and such determination is conclusive on this court.   The omission to provide adequate fire-guards cannot, as a matter of law, be said to have been negligence contributing to the injury.   (*Mo. Pac. Rly. Co. v. Kincaid*, 29 Kan. 654; *Mo. Pac. Rly. Co. v. Cornell*, 30 id. 35; *Ft. S. W. & W. Rly. Co. v. Tubbs*, 47 id. 630; *U. P. Rly. Co. v. Eddy*, ante, p. 291, 42 Pac. Rep. 413.)

Complaint is also made of various rulings of the court in the admission and the refusal of evidence, and of the instructions to the jury.   We do not deem it necessary to lengthen this opinion by a detailed consideration of those objections.   We think the instructions of the court fully and with substantial correctness gave the jury the rules of law applicable to the case.   There was no substantial dispute as to any of the material facts, and the result would probably not have been changed had all the rulings of the court upon the admission of evidence been in favor of the plaintiff in error.

The judgment is affirmed.

All the Judges concurring.