**BREWER v. UNITED STATES.**

Clv. A. No. 869.

United States District Court
M. D. Georgia, Macon Division.

Dec. 23, 1952.

Carlton Mobley, Macon, Ga., and Harvey J. Kennedy, Barnesville, Ga., for plaintiff.

John P. Cowart, U. S. Atty., Jack J. Gautier, Asst. U. S. Atty., and Harris, Russell, Weaver & Watkins, Macon, Ga., for defendant.

CONGER, District Judge.

On June 11, 1951, at about noonday, Clarence Brewer, approximately fourteen and a half years of age, the minor son of the plaintiff, and a resident of Warner Robins, Georgia, went to the Dormitory Area of the Robins Air Force Base to use the civilian swimming pool. He paid 10¢, the required charge for the use of the pool, and had made preparation to go in the water. While standing or walking near the pool, a whirlwind came along and either lifted the umbrella, stationed over the lifeguard chair, and used to protect the lifeguard, or toppled it over and it pulled out of the wire holding it, and while in the air, some few feet from the lifeguard chair, one of the ribs in the umbrella struck Clarence Brewer, piercing his right temple, wounding him, and from which he died on June 13th.

The lifeguard chair, which was eight or ten feet high, was located at the edge of the pool, and was constructed of galvanized pipe, about two inches in diameter. This chair had a metal back and arms, a wooden seat, and a wooden foot-rest or floor. To the back of this lifeguard chair was located and attached an umbrella, which extended two or three feet above the head of the lifeguard when occupying the seat. The umbrella in use on June 11, 1951, was bright canvas, was seventy-four inches in diameter, and weighed ten and one-half pounds, and was supported by a solid wooden staff about six to eight feet long and about one and one-half inches in diameter. As originally constructed, and prior to 1950, the umbrella was fastened to the back of the chair by a metal clasp or collar, and was securely held by two bolts through holes in the back of the chair, and at the wooden floor or bottom of the chair the end was inserted in a hole about the size of or a little larger than the staff.

On the date of the injury and for some time prior thereto, the metal clasp or collar, which had formerly held the umbrella firmly and securely in its place, had been lost or destroyed, and the lifeguard, a young girl seventeen and a half years of age and a junior in high school, undertook to fasten the umbrella to the chair by means of a wire about the size of a "clothes line," which she said she ran through the holes in the back of the chair, formerly used for bolts, and wrapped the wire around the staff and through the holes probably three times. She said she took pliers and fastened the wire as tight as she could, and when it appeared to be loose, she attempted to tighten it. The hole in the foot or floor of the chair had been broken out, and instead of being a round hole, there was simply a U shaped aperture. On June 11th, and throughout the seasonal use of the umbrella, the staff was inserted through the opening in the wire and on down into the aperture in the floor or footboard.

There was evidence that the wire was loose and slack and that the portion of the foot or floorboard between the hole and the edge, having been knocked out, offered little fastening security for the staff of the umbrella to the lifeguard chair.

The evidence is without dispute that on June 11th, at the time of the accident out of which this suit grew, a whirlwind came along, that there were paper and dust in the air, and that the umbrella was in the path or near the center of the whirlwind, which either lifted the umbrella upward out of the aperture and the wire, at the top of the seat, or else lifted it sufficiently high to get it above the aperture, so that the umbrella toppled over pulled out of the wire, and within a few feet fell to the earth, after striking the deceased.

The plaintiff, who is the mother of the deceased, brought her suit under the provisions of Section 105–1307 of the Georgia Code, which is as follows:

"A mother, or if no mother, a father, may recover for the homicide of a child, minor or sui juris, upon whom she or he is dependent, or who contrib-

utes to her or his support, unless said child shall leave a wife, husband, or child. The mother or father shall be entitled to recover the full value of the life of such child."

Section 105–1308 of the Georgia Code provides that the full value of the life of a decedent as shown by the evidence is the full value of the life without deduction of necessary or other personal expenses of the deceased had he lived.

Section 105–1307 was amended by the General Assembly of the State of Georgia in 1952, as shown by the Acts of 1952, page 54, which amendment eliminated the provision of the quoted section, "upon whom she or he is dependent, or who contributes to her or his support". However, the incident out of which this suit grew occurred prior to the 1952 Act and it, therefore, is not applicable.

The plaintiff proved that her son, who was fourteen years, ten months and twenty days old, was well and mentally firm and of due size for his age, that he possessed about the average mind, and that he was physically smart. The evidence disclosed that he was earning at the time of his death slightly in excess of $25 per week, selling and delivering newspapers, which amount he contributed to his mother.

The defendant defended generally on three grounds: First, that the civilian swimming pool at Robins Air Force Base was not a governmental agency and that the defendant was not, therefore, liable for any injury that might have occurred in its operation; second, that there was no negligence on the part of anyone for which the defendant could be chargeable; third, that the injury sustained was caused by a "violent, unprecedented, uncommon and unforeseeable whirlwind," and, therefore, was "an act of God."

█ I have no serious difficulty in reaching the conclusion that the civilian pool was a governmental agency, for the reason that the same was constructed, maintained and operated by Government agents and was under their direct supervision and control; that Government agents, and particularly Major McWaters, was directly in charge of the pool, visited it daily, superintended its activities, promulgated rules and regulations for the operation of the pool, and that if any injury was suffered by the negligent operation thereof, the defendant would be liable.

█ I cannot concur in or assent to the second ground of defense contended for by the defendant, to-wit, that there was no negligence on the part of anyone for which the defendant is liable. The evidence disclosed without dispute that the lifeguard chair was substantially constructed, was permanently fastened and attached to the concrete on the edge of the pool, and that as originally constructed and maintained, a metal clasp was provided to encircle the handle of the umbrella, which clasp was tightly and securely fastened by bolts going through the back of the chair, and that the bottom or lower end of the staff of the umbrella went through a round hole, making it immovable from all sides. It is without dispute that at the time of the injury resulting in the death of the deceased, the round hole had become horseshoe in shape and the metal clasp had disappeared and was no longer being used, and in its stead a wire, about the size of a "clothes line," was used by being run through the holes in the back of the chair and wrapped around the umbrella. This, however, was not done daily. When the umbrella was inserted or removed, it was simply lifted into and out of the wire on the back of the chair. There was ample evidence to the effect that the wire did not, either tightly or securely, hold the umbrella. I therefore find that the defendant was negligent in the manner and method of fastening and holding the umbrella on the date of the injury to the deceased.

With respect to the third defense, that the proximate cause of the injury was the unforeseen and unexpected whirlwind, which either lifted the umbrella clear out of its station or caused it to topple over so that it fell out, and was, therefore, an act of God for which it is not responsible, presents a difficult question.

I am perfectly certain that the whirlwind was a serious contributing factor to the umbrella's falling or being blown to the

ground. I am also certain and sure that if the umbrella had been fastened as originally intended and as originally done, and as I believe should have been done, the whirlwind would not have either lifted it up or toppled it over. In my judgment, both the whirlwind and the negligence of the defendant contributed substantially to the occurrence that happened, resulting in the injury done. In my judgment, neither the whirlwind nor the negligence of the defendant was the sole and proximate cause of the injury, but both were substantially contributing factors.

On the question of whether or not an act of God combined and united with human negligence, causing injury, can be chargeable to both in some sort of proportion is one on which the courts are divided, but which seems to me to be fair and just. In this case, the injury would not have occurred if there had not been a whirlwind, and it would not have occurred if the umbrella had been securely and properly fastened. No recovery can be had for an injury caused by an act of God, but why should that logically and therefore legally prevent a recovery for such proportion of the negligence as was contributed by the defendant? In 38 American Jurisprudence, page 720, paragraph 65, it is stated:

"The fact that the negligence and the act of God did not contribute equally to the injuries resulting may be taken into account in the assessment of damages to be awarded for the negligence, and the negligent person may be held liable only for the proportionate amount of the damage caused by his fault."

In 35 Ga.App. 438, at page 440, 134 S.E. 122, at page 123, in the case of Central of Georgia Railroad Company v. Evans, Judge Jenkins, speaking for the court, said:

"In order for the defendant carrier to absolve itself from liability for the damage to the shipment, it then became incumbent upon it to show that the loss was occasioned by an act of God or of the public enemy, unmixed with any negligence on its own part contributing thereto."

■ I do not believe that the defendant can or should escape liability if it was negligent and its negligence was the proximate or materially contributing factor to the damages done. The defendant's position that the umbrella blew up or off solely because of the whirlwind is not tenable, for the reason that if the umbrella had been properly and securely fastened, the whirlwind would not have dislodged it.

Mr. Charles Graves, a Recreational Engineer, who testified by depositions, stated that in all cases in the construction of lifeguard chairs and providing for umbrella protection, that the method and manner of securely holding and fastening the umbrella was always taken into consideration, and that generally the points of the ribs were covered, so that if children using the pool should contact the points of the ribs they would not be injured.

■ I am somewhat of the opinion that the defendant might have contemplated the possibility of the umbrella being dislodged by a whirlwind for the reason that the testimony disclosed that it had, at least on one or two occasions prior thereto, blown off, and one time into the pool, and the evidence further disclosed that whirlwinds in that immediate vicinity and section were quite usual and ordinary occurrences. The fact that the umbrella had been dislodged previously, the fact of its relatively large size compared with its relatively small weight, would make it susceptible to any and all extraordinary wind or breeze, even though rather casual, and that the defendant should have foreseen that the umbrella might become dislodged. It would be difficult, of course, to either see or generally conceive the terrible, disastrous results that occurred on the occasion in question, but the defendant might have foreseen that under the loose and negligent manner in which the umbrella was fastened that it might be dislodged by winds common in that section and community and do injury to children standing or being nearby.

"The view that where a natural force or act of God unites with human negligence in causing injury, the negligence of the human agent is regarded as

a condition, and not as a cause of the injury, is disapproved generally. The general rule is that when the negligence of a person concurs with an ordinary * * * natural force, or with a so-called act of God, in producing an injury, the party guilty of such negligence will be held liable for the injurious consequence, if the injury would not have happened except for his failure to exercise care. Reducing the principle to a maxim, 'he whose negligence joins with the act of God in producing injury is liable therefor.' " 38 Am.Jur., page 719, paragraph 65.

"An act of God is an unusual, extraordinary, sudden and unexpected manifestation of the forces of nature which man cannot resist. The fact that no human agency can resist an act of God renders misfortune occasioned *solely* thereby a loss by inevitable accident which must be borne by the one upon whom it falls. On the other hand, when an act of God combines or concurs with the negligence of the defendant to produce an injury, the defendant is liable if the injury would not have resulted but for his own negligent conduct or omission." 38 Am.Jur., page 649, paragraph 7.

"If the misconduct is of a character which, according to the usual experience of mankind, is calculated to afford an opportunity for the intervention of some subsequent cause, the subsequent mischief may be held to be a result of such misconduct." Jacobson v. Suderman & Young, Inc., 5 Cir., 17 F.2d 253, 254.

A Georgia case, somewhat in point and confirming the liability of a person whose negligence contributed to an act of God which resulted in injury is that of Bowen v. Smith-Hall Grocery Company, 141 Ga. 721, headnote 1, 82 S.E. 23, L.R.A.1915D, 617 reading as follows:

" * * * A firm, whose place of business abutted on a much traveled street in a city, placed a large quantity of trash and loose sheets of paper on and near the street and sidewalk on a day when the wind was blowing sharply. They did not put it in a receptacle or confine it in any way. The sheets of paper were light, and were naturally liable to be blown about the street by even a light breeze, and naturally and inevitably tended to excite and frighten, not only nervous horses and mules, but even quiet and steady ones. The plaintiff, a capable driver, was driving two reasonably well-broken, steady, and roadworthy horses along the street. The wind blew some of the paper under the horses and against their legs, frightening them and causing them to run away and injure him. Held, that such petition was not subject to general demurrer."

■ The deceased boy was at a place where he had a right to be. As a matter of fact, he was an invitee. He had paid an admission fee charged to go upon the premises and use the pool. He was, therefore, entitled to a safe place, and those who operated the place owed him a duty to keep the place and premises in such safe condition as not to do him injury.

"One who is himself without fault has, in justice and common fairness, a right to recover from one who has caused him loss by a tortious act, although an ordinary natural occurrence entered into the chain of events which culminated in the loss." Louisville, N. A. & C. R. Co. v. Nitsche, 126 Ind. 229, 26 N.E. 51, 53, 9 L.R.A. 750.

"If negligence is of a character which according to usual experience of mankind is likely to afford an opportunity for the intervention of a natural cause, an injury caused by the negligence in conjunction with the natural cause, is the proximate result of the injury, although the particular details of the damage cannot be anticipated accurately." 38 Am.Jur., page 734, par. 75.

"The ordinary conditions or forces of nature, such as ordinary wind, cold, heat, and the like, that are usual at the time and place, under the circumstances, and that reasonably should

have been expected or foreseen as probable to occur, are not, in' general, independent, efficient causes where they affect or operate on a negligent act or omission in causing a result." 38 Am. Jur., page 734, paragraph 75.

■■ It is true, however, that if an act of God, wholly disconnected with negligence, even' though there may be negligence, produces an injury, the negligence is not the proximate cause of the injury; or if the injury was caused by some extraordinary, unusual, unforeseen and unexpected act of God which would have caused the injury, if there had been no negligence, then in that event the negligence is not the proximate cause of the injury.

In Morril v. Morril, 104 N.J.L. 557, 142 A. 337, 60 A.L.R. 102, the court held that the opening of a garage door by wind of such velocity as to be the equivalent of the vis major is a responsible intervening cause which destroys the causal connection between a defective latch upon the door and injuries to a boy at play occasioned by such latch as the door opened, and negatives liability asserted on the theory of negligence in the retention of the defective latch upon the door.

In' any and all events I find, first, that the civilian pool in the Dormitory Area of Robins Air Force Base was operated by the defendant; second, that the defendant was negligent in failing to use clasps or other approved appliances . or instrumentalities that would have held the umbrella safely and securely in place and prevented it from being dislodged by the whirlwind of common and usual proportions in that community and in attempting to tie and fasten the same by wire not tightly wrapped around the staff of the umbrella, and in continuing to use the aperture in the floor of the lifeguard chair after the floor had given way or been abused, with the hole no longer existing, but the aperture in the shape of a U, and which did not give proper support to the base of the handle of the umbrella which was inserted therein; and, third, that the whirlwind, which was a natural force and over which the defendant had no control, was not the sole or proximate cause of the in-

jury, but that the injury was largely the result of the negligence of the defendant.

■ It does not ultimately greatly matter whether the damages resulted from the negligence of the defendant, concurred in and contributed to by a force of nature, can be apportioned, and the judgment is not solely predicated upon that legal theory, but is determined from the facts, by the Court, without the intervention of a jury. I took all relevant facts and circumstances into consideration in determining the amount. The legal and factual issues are not as difficult of determination' as the amount the plaintiff should justly recover.

■ I am confident and certain that the plaintiff ought to recover, and I believe that a just and fair amount would be the sum of $15,000 and it is so ordered; and it is further ordered that the cost be charged against the defendant.