THEOPHILUS WEST, APPELLANT, vs. E. J. BLACKSHEAR & CO., APPELLEES.

1. A declaration setting out the facts that the plaintiffs on a certain day, at defendant's request, let to hire and delivered to the defendant a certain horse, the defendant promising to use the same in a careful, moderate and reasonable manner while he so had him on hire, but alleging that he did not use the horse in a careful, moderate and reasonable manner, and that by reason of negli-

gence and carelessness on the part of the defendant, the horse ran away and became injured, damaged, sick and worthless, is a declaration upon a contract of bailment, and the liability of the defendant arises out of such contract.

2. An action of this character, upon such contract of bailment, may be maintained against the bailee for any neglect or breach of duty, by which the bailors were damaged.

3. The question of negligence being one of fact, is peculiarly for the jury. The evidence in this case was conflicting, and the jury having found by their verdict that the bailee was duly warned by the bailors of the fault or bad quality ot the horse, it was his duty in the use of the horse to exercise such care and prudence as would ordinarily be required to guard against mishap from such fault of which he had been warned.

4. Common or ordinary diligence, in the sense of the law, is such as men of common prudence generally exercise about their own affairs.

5. An exception to the charge of the court to the jury that it is not in writing, must be taken at the time the charge is delivered. The parties may waive the formality of a written charge, and they cannot urge upon a motion for a new trial, or on an appeal in this court, for the first time, such omission. 17 Fla., 783.

Appeal from the Circuit Court for Jackson county.

Blackshear & Co. sued West for damages for injuries to their horse, occasioned by the defendant's negligence. The declaration contains two counts. The first count in substance alleges that the defendant, on or about the first day of December, A. D. 1882, hired from the plaintiff a horse, and that while he had the same on hire, he treated it in such a careless and negligent manner that the horse became wounded, damaged, sick, lame, and deteriorated in value. The second count alleges that the defendant imprudently, carelessly and negligently left the horse unattended while harnessed to a vehicle, and carelessly and negligently left him insecurely fastened while harnessed to a vehicle, in consequence of which the horse ran away with the vehicle

attached to him, bruising, wounding and maiming himself, rendering himself sick and lame, and utterly worthless to the plaintiff, &c. To this declaration the defendant demurred. To the first count, the grounds of demurrer were: First. It does not allege the specific date of the injury. Second. There is no allegation of negligence. Third. The injury is not described; and fourth, not sufficient facts stated to give a right of action. To the second count the grounds of demurrer were: First. There was not a sufficient statement of facts to give a right of action. Second. It does not sufficiently set out the negligence of the defendant, nor the nature of the injuries the horse received. A general demurrer, upon the ground that the declaration does not state facts sufficient to constitute a right of action.

The demurrer was overruled by the court, and the defendant excepted. Issue was then joined, the cause came on to be tried at the May term of the court, A. D. 1883, and a verdict was rendered against the defendant. The attorney of the defendant moved for a new trial on the following grounds, to wit:

1st. The verdict is without evidence to support it.

2d. The verdict is against the preponderance of the evidence.

3d. The verdict of the jury is against the law.

4th. The court erred in refusing the charge to the jury asked to be given them by the defendant.

5th. The court erred in charging the jury, that if they believed from the evidence that the defendant was notified by the plaintiffs or their agents of any bad qualities of the horse, then the defendant would be bound to exercise that diligence that was necessary to guard against injury from the bad qualities.

6th. The defendant was only liable for gross negligence, or from acting *mala fides* in the use of the horse.

7th. The court erred in not charging the jury in writing, as the statute prescribed.

8th. The court erred in not reducing his rulings upon the instructions asked by defendant's counsel to writing, and pronouncing the same as given or refused to the jury.

The motion for new trial was overruled, and the defendant excepted, and the judgment was entered for the plaintiffs. From this judgment the defendant brings his appeal, and assigns error as follows:

1st. The court erred in overruling defendant's demurrer to the first and second counts of plaintiffs' declaration.

2d. The court erred in all that part of the charge that defendant's counsel excepted to.

3d. The court erred in refusing to give the charge asked by defendant's counsel.

4th. The court erred in not granting the defendant a new trial on the ground set forth in the motion.

5th. The court erred in not reducing his rulings upon the instructions asked by defendant's counsel to writing, and pronouncing the same as given or refused to the jury.

6th. The court erred in not charging the jury in writing, as the statute prescribes.

*J. F. McClellan* for Appellant.

*Liddon & Carter* for Appellees.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the Court.

The first error assigned cannot be maintained. The specific date of the injury, as charged in the complaint, is of no consequence. The statement of the time of committing the injuries is seldom material; and in a case of this character, it may be proved to have been committed on a day

anterior or subsequent to that stated in the declaration. The declaration alleges " that the plaintiffs, on or about the first day of December, A. D. 1882, at the defendant's request, let to him, and delivered to defendant, a certain horse, &c." That in pursuance of such letting, the defendant promised to use the same in a careful, moderate and reasonable manner, while he had the same on hire. That defendant did not use the horse in a careful, moderate and reasonable manner, &c. This is an action on a contract, and the liability of the defendant arises out of a contract. There are two counts in the declaration, similar in effect. The second count more specifically describes the negligence of the defendant, in that he carelessly and negligently left the horse unattended and insecurely fastened while harnessed to a vehicle, in consequence of which carelessness and negligence the horse ran away with the vehicle, and was wounded and injured, and became lame, sick and worthless. The two counts are in assumpsit, upon a special contract of bailment setting out the promise and undertaking of the defendant, the consideration upon which it was founded, the breach of that promise by the defendant, his neglect and carelessness and the loss sustained by the plaintiffs. The declaration is fully sustained in every respect by the precedents and authorities.

An action of this character may be maintained against a bailee, upon the contract for bailment, for any neglect or breach of duty. 1 Chitty Pleadings, 16th Ed., 114 ; Kennaird vs. Jones, 9 Grattan, 183 ; Ferrier vs. Wood, 9 Ark., 85 ; Story on Bailment, §§ 2, 3 and notes ; 2 Chitty Plead., 16th Ed., 67, 144 ; Bank of Mobile vs. Huggins, 3 Ala., 206.

The court did not err in overruling the demurrer. An allegation of carelessness and negligence appears in both counts of the declaration. The injury was sufficiently de-

scribed, and facts were stated to give the plaintiffs a right of action.

The next error assigned is to that part of the charge of the court reading as follows: " But the plaintiffs say further that if the horse was not in this respect such as they are required to keep for the public, the defendant was warned as to his qualities, and did not act in a way to guard against injury from these. As to this, I instruct you, if the defendant was warned of any bad quality of the horse, it was his duty in the use of him to exercise such additional care and prudence as would be required to guard against mishaps from such bad quality. I do not mean that this would have been required of him unless he took the risk of driving the horse himself. I think if he did take that risk, he was bound to use that sufficient care which was made necessary by the warning." The evidence in this case, as appears from the record, is conflicting. Blackshear, one of the plaintiffs, testified that the horse was " gentle enough for ordinary purposes. He had no bad qualities whatever, except that he was a little nervous on being hitched, when you would pull the buggy upon him, and he would not stand hitched while fastened to a buggy. I always told every one who hired him to take him loose from the buggy when they stopped at a place." " He was nervous when you hitched him up and left him standing." John Anderson testified: " I delivered horse, and told Dr. West, Mr. Blackshear and Russ said take horse loose from the buggy when he stopped. He sent me after a halter to tie the horse. I gave Dr. West halter to tie the horse. I told West to take the horse out of the buggy when he stopped." W. W. Russ, one of the plaintiffs, testified: " I told Dr. West to be careful when he stopped at place, as he would not stand hitched to a buggy. I told Dr. West horse would not stand hitched, he was spirited,

had never been scared or run away. Horse was a little skittish and nervous."

Hardy Holden testified : " I was at the stable when Dr. West came for a horse. I told him I had only two or three horses left. Would let him have Henry Jordan, the best horse in the stable, but that he must be careful to unhitch him when he stopped at a place. He said all right. He sent after a halter."

The evidence shows the defendant received a rope to tie the horse with ; that the rope was fastened about the neck of the horse, and then tied to a tree ; that the horse reared up, ran backwards, kicked and ran away, receiving injuries, and that the horse when so tied was still hitched to the buggy.

On behalf of the defendant, Theodore West, son of the defendant, testified that he was standing in front of the drug store when Andrews brought the horse and buggy to his father. Defendant asked Andrews if the horse would stand tied, and Andrews said yes. The defendant then told him to bring a rope. That W. W. Russ was not present. Wm. McPherson testified that Andrews told the defendant in answer to a question, that the horse would stand tied ; that the defendant told Andrews to bring him a rope, and a rope was brought. Did not see Russ there. The defendant himself then swore that he told Hardy Holden that he wanted a good horse, best, and a gentle horse. He asked him "if the horse would stand hitched to the buggy ; he said yes. I told him to send me a rope to tie him with. He sent it by Brown Holden, a little boy. I hitched the horse to a tree with the rope furnished me by tying it to a tree and around horse's neck."

We cannot see, after an inspection of the evidence, that there was any error in the charge as excepted to. The rule of law is well settled that the hirer must re-deliver the

thing hired in good condition. That he is liable for negligence if such negligence be productive of damage to the owner, and he can only be relieved on account of such damage by showing that he was chargeable with no such negligence. The jury in effect have by their verdict found that the defendant was notified at the time of the hiring of the horse that he would not stand tied when hitched to a buggy, and that if he stopped he must be taken from the buggy to be tied. The injury to the horse was no extraordinary catastrophe, but resulted from the negligence of the defendant in the manner of his hitching, as the jury have found from the evidence, and not acting prudently in having the horse hitched to the buggy, after the notice which he had received from the bailors. The defendant, as the jury have found, was warned of the bad quality of the horse, and, as the court in its charge says, it was his duty in the use of him to exercise such additional care and prudence as would be required to guard against mishaps from such bad quality. Common or ordinary diligence, in the sense of the law, is such as men of common prudence generally exercise about their own affairs. Wharton's Law of Negligence, §713; Story on Bailments, §11, and cases cited. In this case the law required ordinary diligence on the part of the bailee, and makes him responsible for ordinary neglect.

Another error assigned is in the court's failure to charge the jury as requested by the defendant's counsel, that " to tie a horse that is hitched to a buggy to a tree with a good strong rope is not an act of negligence on the part of one who has hired the horse from a livery stable keeper or keepers, to be driven by a physician in his practice, and when calling to see one of his patients."

In this case, where there is conflicting evidence, the question of negligence is one of fact, and must be determined by

the jury. "The witness is asked, not whether A was negligent at a particular juncture, but what were the facts of the case, and from these, negligence, if there be any, is inferred. Now, negligence may be disputed when the facts are undisputed, and the question in such a case, when the dispute is real and serious, is eminently one for the jury, under the direction of the court." Wharton's Law of Negligence, §420, and cases cited. In Gaynor vs. Old Colony & N. B. Co., 100 Mass., 208, the court say, speaking of negligence: "What is ordinary care in such cases, even though the facts are undisputed, is peculiarly a question of fact, to be determined by the jury under proper instruction. It is the judgment and experience of the jury, and not of the Judge, which is to be appealed to." The facts were all before the jury. The court had charged them fully upon the question of negligence, and it was for them to determine, under all the circumstances of the case, the very question which counsel asked the court to determine, to wit: "That there was no negligenee in thus tieing the horse hitched to a buggy to the tree." We think there was, therefore, no error in the court's refusing so to charge.

The next error assigned is in not reducing the rulings upon the instruction cited by defendant's counsel to writing, and pronouncing the same as given or refused, to the jury. There is no evidence in the record that the court did not reduce his rulings to writing and pronounce the same to the jury. The bill of exceptions says: "The Judge charged the jury orally, which after adjournment he reduced to writing, which is in the words following, to wit:" Embodied in that written charge appears the request of the defendant's counsel that the court should charge in the language used in the last above assigned error. At the foot of this the Judge certifies under his hand and seal that he re-

fused the instruction so asked by the counsel, and that defendant excepted.

The ruling of the court appears to be in writing, signed and sealed, and is attached to and made a part of the charge of the court, as embodied in the bill of exceptions. Jones vs. State, 18 Fla., 890. Aside from this fact, no exception seems to have been taken to the oral charge of the Judge, afterwards reduced to writing, or to the refusal, orally, if made, to the request for such instruction by defendant's counsel. This error, if error there was, seems to have been cured by the acts of the defendant's counsel. If he had excepted to the action of the court, the omission could and probably would have been cured. The jury could have been recalled, and the instructions would have been reduced to writing and repeated to them. In the case of Southern Express Co. vs. Van Meter, 17 Fla., 783, this court have fully determined this question. It says: "We think the rule in a case of this character is that a party cannot, by his silence in the Circuit Court, waive the failure of the Judge to put his instructions in writing, or to sign and seal them, or. to do other merely formal acts of this character, and after having his chance before the jury, urge upon a motion for a new trial, or here, for the first time, his omission." Had the defendant excepted, as it was his right so to do, at the proper time, there was an opportunity for the court to correct the supposed error at once; but he cannot now, after having failed to succeed, avail himself of an objection which might have been easily removed. Coker & Scheffer vs. Hayes, 16 Fla., 370.

The last error assigned is that the court erred in not charging the jury in writing, as the statute prescribes. As before said, the bill of exceptions contains the instructions to the jury in writing, although it says they were given to the jury orally, and subsequently reduced to writing.

There seems to have been no objection to this course by either party, and no exception thereto was taken. What we have said above is an answer to this alleged error, under the previous decisions of this court. The counsel for appellees claim in their argument that the law of 1877, directing that the charge of the court shall be wholly in writing, is directory merely, and not mandatory. This court have said the act was mandatory. Baker vs. State of Florida, 17 Fla., 406. Yet the omission must be excepted to, or it will not avail the appellant. 17 Fla., 783. In this case the bill of exceptions contains the charge of the Judge, duly signed and sealed by him.

The judgment of the court below must be affirmed.