MOLLIE C. ROST (NOW HASSELMEYER) ET AL. V. MISSOURI PACIFIC RAILWAY COMPANY.

No. 2642.

1. **Duty of Railway Company to Prevent Escape of Fire.**—The trial court charged the jury: "Railroad companies are required to use such diligence, care, and prudence to keep their right of way as free from combustible grass and weeds as prudent and cautious persons would under similar circumstances," etc. In another paragraph the jury were told: "It is the duty of railway companies to prevent accumulation of combustible materials along the right of way, * * * and that the company would not be liable unless it negligently permitted the accumulation of combustible materials along its right of way." Among duties the jury were told "that it devolved upon the railway company to prevent the accumulation of combustible material upon the right of way." *Held,* that the charge was sufficient to comprehend all the combustible material upon the right of way to be guarded against in its duty.

2. **Construction of Charge.**—All parts of a charge having reference to the same subject should be read and considered together. An omission in one part abstractly considered may be cured in some other part of the charge.

3. **Negligence.**—The court defined negligence as "the absence of such care and prudence as prudent, cautious, and skillful railroad men would use under similar circumstances." *Held,* good as far as it went; no additional charge having been asked, it will be held sufficient.

4. **Charge Limited to Issues Made in Pleading.**—In suit against a railway company for damages for negligence resulting in injury from fire, the acts of negligence being failure to provide proper appliances, etc., for preventing escape of sparks, etc.,

from smokestack and furnace; the inefficiency of the employes operating the train; and the negligence of the company in permitting the accumulation of dry grass, weeds, and decayed ties along the track—*held:*

1. That it was not relevant to prove, nor was it proper to submit as a ground of liability that the employes of the company failed to extinguish the fire.

2. But if it was proven under the allegations, still a further charge was not asked.

APPEAL from Galveston. Tried below before Hon. Wm. H. Stewart. The opinion states the case.

*A. B. Buetell* and *F. Charles Hume,* for appellants.—1. The evidence showing or tending to show that there were combustible substances along the right of way other than grass and weeds, to and by which fire might be communicated, the court erred in instructing the jury that with respect to the condition of the right of way the extent of defendant's duty was to use diligence in keeping the right of way free from combustible grass and weeds. The duty of defendant was to use proper care to keep the right of way free of all combustible substances.

2. The measure of diligence imposed by law on the company with respect to the cleanliness of the right of way was such as cautious railroad operators would use under like circumstances, and the court erred in prescribing a different and less exacting measure of diligence, viz., such as would be required of prudent and cautious persons under similar circumstances.

3. The court erred in limiting defendant's obligation to the prevention of burning from sparks. It was not less its duty to prevent burning from cinders, coals, or other kinds of fire.

4. It was not less its duty to extinguish the fire after it was set, whether by sparks or otherwise; and in face of the evidence showing or tending to show the negligent omission of defendant's section men to arrest or extinguish the fire, or to make any effort to do so, the court prejudiced the rights of plaintiffs by instructing the jury in effect that defendant's duty was fully performed if it used good spark arresters. Rev. Stats., art. 1317; Ralke v. Railway, 26 Wis., 537–40; Erd v. Railway, 41 Wis., 65–7.

*Willie, Mott & Ballinger,* for appellee, cited Railway v. Wright, 62 Texas, 515; Rosenthal v. Middlebrook, 63 Texas, 333; 2 Wood on Rys., sec. 327; Kenney v. Railway, 70 Mo., 252–56; Railway v. Shipley, 39 Md., 251.

HOBBY, JUDGE.—Mollie Rost, joined by her husband John Rost, sued the Missouri Pacific Railway Company to recover damages for the destruction of certain personal property belonging to her, consisting of houses, fences, and other improvements, near Clear Creek Station, on

the line of said company's railway, between Houston and Galveston. The destruction of this property occurred about the 13th February, 1886, and it was alleged to have been caused by fire communicated by the engine of the company to dry grass and other combustible material along defendant's track, thence spreading, extending to and involving plaintiff's property, valued at about $9612. The petition charged the appellee with negligently permitting the accumulation on and near said track and right of way of dry grass, weeds, and decayed ties along the entire line, and specially at the point of communication by it of fire. Gross negligence was alleged to consist of the failure by appellee to provide proper appliances, etc., for the prevention of the escape of sparks and cinders from the smokestack and furnace of the engine. Defendant's servants were charged with inefficiency and gross negligence in operating the engine, whereby sparks, etc., were permitted to escape and fall on said dry grass and other combustibles. Upon suggestion of a divorce of plaintiff pending the suit, and disclaimer of any interest therein by John G. Rost, the plaintiff Mollie C. was permitted to prosecute the suit for her own use as a *feme sole,* and in her maiden name of Hasselmeyer, restored to her by the divorce decree. On trial verdict and judgment were rendered for defendant, and plaintiff's motion for new trial being overruled the case is here upon her appeal, for revision.

There was proof of the destruction by fire of plaintiffs' property on about February 13, 1886, the value of which was shown to be between eight and nine thousand dollars. The evidence most favorable to the plaintiff in the court below is that of the witness King, who stated that he was on the 13th of February, 1886, a section hand at work for the company with McMullen, the foreman, piling ties near the track; saw the train pass at about 11:30 a. m., and about a quarter of an hour later he and the section boss McMullen saw the fire about 400 yards from the point at which they were at work, between the right of way fence and the track. As soon as they saw the fire they went to dinner, and a little after 1 o'clock when they returned the fire was burning Butler's south fence. Witness and McMullen were the only persons there. "They tore down the fence and tried to put the fire out. Along towards 2 o'clock the fire spread rapidly on the prairie, going right down on the property at Clear Lake." This witness further stated that "the engine at the moment of passing him was heaving sparks out of her right lively. The ash pan of the engine was all afire—a solid mass of red cinders." There was evidence to the effect that "there were a few old rotten ties along the right of way." There was testimony that "the right of way was clear of dry grass at the time of the fire; it had been burned off the preceding November."

The appellee proved that the engine referred to was inspected by defendant's inspector of engines at Palestine about fifty hours prior to the fire. The appliances used on it for arresting sparks and cinders were

said to be of the best; the smokestack, spark arrester, and ash pan were in good order. The diamond smokestack, cast iron coil, and steel wire netting to arrest sparks, were considered the best in use known to railroad men for the prevention of the emission of sparks and cinders. There was evidence to the effect that no appliance would entirely prevent the escape of sparks and allow the engine to make steam enough to pull an ordinary train. The fireman on the engine testified that he had been on an engine for eight or nine years, and had never been able to see sparks fly from an engine in the day time, and that no one standing by the side of the track could see the ash pan of an engine passing at the rate of thirty miles an hour. This engine had an extended ash pan, with wire netting bolted down over it to avoid the dropping of fire. Such is a synopsis of the testimony in the case.

The errors assigned relate to the charge, and seem to consist principally of criticisms upon the supposed omission to submit in full to the jury all of the issues made by the evidence.

The first error assigned is that the court charged the jury as follows: "Railroad companies are required to use such diligence and care and prudence to keep their right of way as free from combustible grass and weeds as prudent and cautious persons would under similar circumstances; and if you believe from the evidence that the defendant was guilty of negligence in this respect, and that such negligence was the cause of the destruction of plaintiff's property, then the defendant company would be liable to the plaintiff for such damages as she sustained thereby."

The first objection to this instruction is that as there was evidence tending to show that there were combustible substances along the right of way other than grass and weeds to and by which fire might be communicated, the charge should have included such "substances" in defining the extent of the company's duty in respect to keeping its right of way clear, etc. The other combustible substances referred to were the decayed ties mentioned by some of the witnesses as lying near the track in some places.

In paragraph 3 of the instructions requested by the appellee and given by the court the jury are told that "it is the duty of railroad companies to prevent accumulation of combustible material along their right of way," etc. So, too, in the preceding paragraph, the language of the charge is that "the company would not be liable unless it negligently permitted the accumulation of combustible material along its right of way," etc.

Among other duties devolved on railroads enumerated in the fourth paragraph of the charge is that they "are to prevent the accumulation of combustible material on their right of way." There can be no doubt from the foregoing quotations from the charges given by the court to the jury that the assignment of error is not tenable, because the charge was given in almost the language appellant contends it should have been given.

It is also objected to the charge quoted that "the measure of diligence imposed by law on the company with respect to the cleanliness of the right of way, was such as cautious railroad operators would use under like circumstances, and not such as would be required of prudent and cautious persons under similar circumstances."

It is a rule, as familiar as it is fair, that all parts of a charge having reference to the same subject should be read and considered together. An omission complained of in one paragraph, abstractly considered, may be cured in some other part of the charge.

Looking to the definition of negligence in a railroad in this case, we find it to be "the absence of such care and prudence as prudent, cautious, and skillful railroad men would use under similar circumstances." If there could be any doubt that by the term "prudent and cautious persons" used in the charge quoted, was meant "railroad operators," we think it is entirely removed when the paragraph defining negligence is read in connection with it.

The charge objected to.was certainly good as far as it went, and if there was an omission, under the well known rule in this State an instruction supplying the omission should have been requested.

The court instructed the jury: "Railroad companies, however, are not insurers against loss by the destruction of property by sparks emitted from the smokestack, but all that is required of them in attempts to prevent burning from sparks is that they shall use the best known spark arresters and keep them in good order, and operate their engines and appliances without negligence."

This, it is claimed, "limited defendant's obligation to the prevention of burning from sparks, when it was not less its duty to prevent burning from cinders, coals, or other kinds of fire."

This assignment is not well taken, because the jury had been instructed in a preceding paragraph that "railroad companies are required to use the best appliances known to skillful railroad men for the lessening of the danger from sparks, cinders, and coals;" and if they believed they did not have such appliances, then the company would be guilty of negligence, and if such negligence caused the burning, etc., defendant would be liable. If the proof had shown that the fire was occasioned by coals or cinders, under such circumstances as constituted negligence in the company, the jury could not, we think, have failed to understand from this charge that it would have been liable.

Appellant also contends that as there was "evidence showing or tending to show that negligent omission of defendant's section men to arrest or extinguish the fire, or to make any effort to do so, the court prejudiced the rights of plaintiff by instructing the jury, in effect, in the charge objected to last mentioned, that defendant's duty was fully performed if it used good spark arresters." The statement in support of this proposition

is that "Tom King, defendant's section hand, saw the train pass at 11:30 a. m., and about a quarter of an hour later he and McMullen, the section boss, saw the fire about 400 yards from the point at which they were working, between the right of way fence and the railroad track. They were at work 500 or 600 feet south of Butler's south fence. As soon as they saw the fire they went to dinner, and upon their return from dinner, a little after 1 o'clock, the fire was burning Butler's south fence, which they knocked down. Along towards 2 o'clock the fire spread rapidly on the prairie, going right down on top of the property at Clear Lake. The fire burned towards Butler's house, and to the bay and lake."

It is contended that under these facts the court should have instructed the jury, in effect, that if appellee's employes negligently failed to extinguish the fire, the company would be liable. The question of the liability of a railroad company for the negligent failure of its employes and servants to extinguish a fire caused along the line of its road by the escape of sparks, etc., from its engine, was elaborately discussed in Missouri Pacific Railway Company v. Platzer, 73 Texas, 118, and Missouri Pacific Railway Company v. Donaldson, Id., 126, and the authorities cited in the briefs in the present case, reviewed at length. In the case before us we are of opinion that the court did not err in failing to charge upon the question of the negligent failure of appellee's servants to extinguish the fire, because to have so charged would have recognized appellant's right to recover upon a distinct ground of negligence not alleged in the petition.

The charge it is well settled should be limited to the case made by the petition and proof. The acts of negligence charged by appellant as having caused the fire were the failure to provide proper appliances, etc., for the prevention of the escape of sparks, etc., from the smokestack and furnace, and the inefficiency of the company's servants in operating the engine, and the company's negligence in permitting the accumulation of dry grass, weeds, and decayed ties along the track.

The jury found by their verdict that the appellee was not guilty of the negligence complained of, and necessarily that the fire was not occasioned thereby. If, however, these averments can be considered as sufficient to authorize a recovery upon the ground of the negligence of said servants in failing to extinguish the fire, as claimed by appellant, the charge complained of was, at all events, correct as far as it went, and if it omitted to fully present the issue an instruction should have been asked. No charge was requested by appellant for the purpose of supplying the supposed omission, and she is not therefore, we think, in a position to complain.

Again, the testimony shows that the appellee's employes, King and McMullen, "tried to extinguish the fire about 1 o'clock; that the wind was fresh, and when it was first discovered at about 11:30 o'clock it was

about 400 yards from them." It was not shown that by the exercise of ordinary care the two employes referred to could have put out the fire. We think the judgment should be affirmed.

*Affirmed.*

Adopted January 20, 1890.