THE FLORIDA EAST COAST RAILWAY COMPANY, A CORPORA- TION EXISTING UNDER THE LAWS OF FLORIDA, PLAINTIFF IN ERROR, v. J. H. WELCH, DEFENDANT IN ERROR.

1. In an action against a railroad company for damages to trees caused through its negligent communication of fire from a locomotive to the lands of the plaintiff, where the engine charged with the fire is not identified, the plaintiff should be allowed to show that other engines of the defendant company started other fires at or about that time either before or after the destruction of the trees,. or emitted sparks, as tending to prove the possibility and consequent probability that some locomotive of de- fendant company caused the fire on the occasion stated.

2. Where the plaintiff, in his declaration, seeks to recover for damages by a fire alleged to have been negligently set by a locomotive of defendant on or about the 10th day of January, 1904, and the evidence shows that the fire which caused the damage was set by the locomotive on January 17, 1904, and there was no objection by defend- ant at the trial to the testimony that the fire occurred on January 17, 1904, and defendant did not claim that he

10—S C

was surprised by the variance, or make any showing that he was misled to his prejudice in the preparation of his defense, or request postponement of the trial on account thereof, and made no objection to the form of the statement of time in the declaration, the court did not err in refusing to charge the jury that plaintiff cannot recover because of this variance between the declaration and the proof.

3.  There is no fatal variance between the allegation and proof where the declaration alleged that the defendant company, through its negligence, communicated fire to the lands of the plaintiff by and from a locomotive, which fire, so communicated from the locomotive, spread over and upon the lands of the plaintiff and burned up and injured trees of the plaintiff, and the proof showed that the fire was not set by and from the locomotive directly, or in the first instance, to the land of the plaintiff, but the fire was negligently set by defendant's locomotive upon the adjoining land of another, and spread thence naturally to the land of the plaintiff, and destroyed his trees. The fact that a fire set by defendant's locomotive passes over lands of another before reaching plaintiff's property, does not render defendant's negligence any the less the proximate cause of the destruction of such property by fire.

4.  Where the setting of a fire by and from the locomotive of defendant was the proximate cause of the injury to plaintiff's trees, it was none the less the proximate cause by reason of the change in the direction of the wind which was blowing at the time the fire was set, and which continued to blow without any extraordinary increase in its velocity until the flames were carried by the wind to the trees of plaintiff and injured and destroyed them. A simple change in the direction of the wind is not an intervening cause that will prevent recovery.

5. It is not error if the judge refuse to give instructions asked for, however pertinent, if the same in substance and effect have already been given by him to the jury.

6. The provisions of section 3148 of the General Statutes of 1906, make proof of damage by fire from defendant's locomotive *prima facie* evidence of negligence, and it devolves upon the railroad company to make it appear that their agents or servants have exercised all ordinary and reasonable care and diligence.

7. An instruction that "one who owns property along side of the railroad must know that trains are expected to run with regularity, and if there are special risks arising from no want of care in the proper equipment of engines and trains, those risks are not chargeable to the railroad, but are incident to the situation, and the extra care they demand devolves upon the other party, and the consequence of his not exercising it must fall upon him because the railroad is not in fault," is confusing, misleading and argumentative, and the court did not err in refusing to so charge.

This case was decided by Division B.

Writ of error to the Circuit Court for Dade county.

The facts in the case are stated in the opinion of the court.

*Geo. M. Robbins,* for Plaintiff in Error;

*G. A. Worley,* for Defendant in Error.

PARKHILL, J.: The defendant in error, hereinafter to be called the plaintiff, sued the plaintiff in error in the

circuit court for Dade county in an action for damages, caused through its negligent communication of fire from a locomotive engine to the lands of the plaintiff, whereby a large number of orange and grapefruit trees of plaintiff were consumed and injured. The declaration filed on the 6th day of February, 1906, is as follows: "Now comes the plaintiff, J. H. Welsh, by his attorney, G. A. Worley, sues the defendant corporation, the Florida East Coast Railway Company, a Florida corporation, and claims damages in the sum of five thousand dollars.

For that whereas, heretofore to wit, in the month of January, A. D. 1904, and previous thereto, the plaintiff was the owner of certain lands lying and being in the county of Dade and state of Florida, and certain valuable orange and grape fruit trees and other citrus fruit trees growing thereon, said land being located near what is known as 'Arch Creek' near the defendant's railroad right of way; that during the said month, the defendant corporation, was a railroad corporation engaged in operating a railroad running from Miami to Jacksonville, Florida, and along by the lands of this plaintiff; that said defendant kept and maintained said railroad in the county of Dade and state of Florida and established at 'Arch Creek' a flag station along the line of said defendant's right of way at which trains being run and operated by the defendant company were often stopped; that in operating said railroad said corporation, the defendant made use of locomotive engines operated by steam power.

That during said month of January, A. D. 1904, on or about the tenth day thereof, the defendant company, through its negligence communicated fire to the said lands of the plaintiff, by and from a certain locomotive engine which locomotive engine was upon the railroad track,

which fire so communicated from said engine, spread over and upon the lands and premises of the plaintiff, and burned up, consumed and injured a large quantity of orange and grape fruit trees and other trees belonging to the plaintiff and being upon the said land; the plaintiff was not guilty of contributory negligence.

The said trees so burned up, consumed and injured by the said fire so communicated by the said defendant company, were of great value, to wit: FIVE THOUSAND DOLLARS.

That as soon as possible after said fire was so communicated and said trees burned up, and within a reasonable time and within the time allowed by law, the plaintiff gave notice to the said defendant company of said fire and the damage done and demanded settlement therefor; that the said defendant company refused and still refuse to settle therefor, to plaintiff's great damage, in the sum of five thousand dollars.

Wherefore the plaintiff brings this his suit against the defendant corporation and claims damages in the sum of five thousand dollars." The defendant filed a plea of not guilty. A trial was had, which resulted in a verdict for plaintiff for eleven hundred dollars. A final judgment was rendered, and defendant sued out a writ of error.

I. There are nineteen assignments of error. The first, fifth, tenth, and fourteenth are argued, and will be considered, together. Under these assignments, it is contended that "the court erred in permitting the plaintiff and his witnesses, W. P. Rodgers, J. C. Smith and D. B. Mabry, to give evidence of other fires set by locomotives of defendant, not shown to have been set by the same engine which plaintiff's evidence tends to show set the fire of January 17th, 1904, for which plaintiff seeks recovery."

The only witness who knew anything about the starting of the fire was B. DeWinkler. He testified as follows: "I am a farmer and my place is about half a mile from Capt. Welsh's place following the road, or a quarter of a mile in a straight line. I remember about the fire at his grove, —that is, I remember about the fire; I did not know at the time that a part of his grove was burned. The fire started about ten a. m. about half way between the depot and Capt. Welsh's grove. It started in the pine woods not far from the county road. I could not tell where I was, not far.    When it started the wind was blowing from the southwest, and it changed to the south and blew the fire over into the pine woods towards the grove. It burned about one and a half days or more; it went clear up to Arch Creek. It was Sunday about ten or eleven o'clock when I first saw the fire in the woods. The wind changed in the afternoon; it came from the southwest in the morning and the fire blew down towards the grove, and towards the afternoon the wind turned towards the south and went to the woods. Three trains came down and two went up that morning. The first train came down about six thirty a. m., and there was one went up a little before; they met at Hallandale; then the train running between Palm Beach and Miami about ten thirty a. m. The fire started between ten and eleven a. m." Witness' house is about sixteen hundred and sixty feet from the railroad depot, and he was at his house that Sunday morning. His boys first called his attention to the fire; it was between the depot and Capt. Welsh's grove,—about three hundred feet north of the depot. He first saw it between ten and eleven o'clock. He saw the trains pass that morning. "I am postmaster at Arch Creek and I am also depot agent for the Florida East Coast Railway Company for selling

tickets. I know what time the trains come along there. The Palm Beach train came along that day about ten forty a. m., and right after that train passed I noticed the fire. I did not go over to the depot when that train passed."

The plaintiff and his witnesses were asked and testified about other fires set by other locomotives of the defendant in the vicinity of plaintiff's grove, at a recent time just before and after the fire of January 17th, which burned and injured the trees in said grove. The defendant objected to these questions and this testimony as follows: "It having been shown by the evidence of the plaintiff that the fire occurred within a short time after the passage of the West Palm Beach and Miami train, which passed Arch Creek at ten forty on this morning, and it having been within the power of the plaintiff to obtain discovery of the defendant as to the particular engine which drew this train, the defendant objects to testimony as to fires set out by any other engine and asks that the testimony be confined to fires set out by the particular engine which drew this train, the point we make being that the engine has been identified, or is capable of identification."

In the case of Jacksonville, Tampa and Key West Railway Company v. Peninsular Land, Transportation and Manufacturing Company, 27 Fla. 1, 9 South. Rep. 661; this court held that where the fire resulting in injury complained of is shown to have been set by a particular locomotive, evidence of former fires set out by the same engine is admissible as tending to prove its defective construction or condition, or improper management, but fires set out by other locomotives are inadmissible because irrelevant. In the instant case, the fire resulting in the injury complained of is not shown to have been set by a particular locomotive. Neither does the declaration charge nor the

proof show that the fire was set by any particular engine. In fact, the witness DeWinkler does, not say how the fire started. There is no direct evidence that the fire was set by any locomotive of the defendant company. It is true Mr. DeWinkler says that right after the Palm Beach train passed, he noticed the fire; and while that statement might raise the presumption that the engine drawing that train set the fire, yet it is by no means conclusive of that fact, or even of the fact that the fire was started by any of the locomotives passing there that morning. The fire might in fact have been set by some other agency than a locomotive belonging to the defendant company.

As the origin of the fire must be established by reasonable affirmative evidence to a reasonable certainty, and as there was no direct proof of the starting of the fire, the plaintiff should be allowed to show that other engines of the defendant company started other fires at or about that time, either before or after the destruction of the trees, or emitted sparks, where the engine charged with the fire was not identified, as tending to prove the possibility and a consequent probability that some locomotive of defendant company caused the fire on the occasion stated. Grand Trunk Ry. Co. v. Richardson, 92 U. S. 454, 23 L. Ed. 356; Northern Pac. R. Co. v. Lewis, 51 Fed. Rep. 658, 2 C. C. A. 446; 6 Current Law, 1229; St. Louis, I. M. & S. Ry. Co. v. Coombs (Ark.), 88 S. W. Rep. 595; Shelly v. Philadelphia & R. R. Co., 211 Pa. St. 160, 60 Atl. Rep. 581; Swindell & Co. v. Alabama Mid. Ry. Co., 123 Ga. 311, 51 S. E. Rep. 386; Wick v. Tacoma Eastern R. Co., 40 Wash. 408, 82 Pac. Rep. 711; Koontz v. Oregon Ry. & Nav. Co., 20 Ore. 3, 23 Pac. Rep. 820; Butcher v. Vaca Valley & C. L. R. Co., (Cal.) 5 Pac. Rep. 359, and numerous cases cited. In Alabama G. S. R. Co. v. Johnson, 128 Ala. 283,

29 South. Rep. 771, it was held that in an action of this kind "where the particular engine which caused the fire cannot be clearly and satisfactorily identified, it is competent for the plaintiff to prove that the defendant's locomotives habitually, at or about the time of the occurrence, threw sparks of dangerous size when passing along the portion of the road where the fire originated; such evidence tending to sustain or strengthen the inference that the fire originated from the cause alleged." Had the plaintiff known the name and number of the engine drawing the West Palm Beach train, the evidence did not identify that engine as the one which set the fire complained of.

In Grand Trunk Ry. Co. v. Richardson, *supra,* the plaintiff was allowed to prove that at various times during the summer, before the fire occurred, some of the defendant's locomotives scattered fire when going past the property destroyed without showing that either of the locomotives which it was claimed caused the fire was among the number, and without showing that the former locomotives were similar to their make, state of repair or management, to the latter ones. The Supreme Court of the United States, through Mr. Justice STRONG, said: "The question, therefore, is, whether it tended in any degree to show that the burning of the bridge and consequent destruction of plaintiff's property was caused by any of defendant's locomotives. The question has often been considered by the courts in this country and in England, and such evidence has, we think, been generally held admissible, as tending to prove the possibility and consequent probability that some locomotive caused the fire, and as tending to show a negligent habit of the officers and agents of the railroad company. Piggot v. R. R. Co., 3 M. G. & S. 229; Sheldon

v. R. R. Co., 14 N. Y. 218; Field v. R. R. Co., 32 Id. 339; Webb v. R. R. Co. 49 Id. 420; Cleveland v. R. R. Co., 42 Vt. 449; R. R. Co. v. Williams, 42 Ill. 358; Smith v. R. R. Co. 10 R. G. 22; Longabaugh v. R. R. Co., 4 Nev. 811. There are, it is true, some cases that seem to assert the opposite rule. It is of course, indirect evidence if it be evidence at all. In this case it was proved that engines run by the defendants had crossed the bridge not long before it took fire. The particular engines were not identified, but their crossing raised at least some probability, in the absence of proof of any other known cause, that they caused the fire; and it seems to us that under the circumstances the probability was strengthened by the fact that some engines of the same defendants at other times during the same season, had scattered fire during their passage."

It is urged on behalf of plaintiff in error, that, because Mr. DeWinkler *noticed* this fire right after the West Palm Beach train passed, the engine which set the fire was identified as the engine which drew that train. It may have been that engine, but this is not by any means certain. The witness did not see that engine emit any sparks or throw any fire. There is no telling how long the fire had been burning before DeWinkler noticed it. *His attention was called to it by his boys.* There is no telling how long the sparks or fire had smoldered or burned there before becoming large enough to attract the attention of some one some way off from it. One train had passed there at 6:30 a. m., and another a little before that time, and three other trains had passed there between that time and 10:40 a. m., including the Palm Beach train. What time two of these trains passed before the arrival of the last train we do not know. It is not at all unlikely that an engine drawing one of these trains emitted the fire complained of. It

is worthy of note, too, that the witness DeWinkler testified at one time that "the fire started at 10 a. m.," and J. A. Carter, a witness for the defendant, testified: " I was at home when I first saw the smoke about 9 or 10 o'clock in the morning."

The case of Annapolis Elkridge Railroad Co. v. Gantt, 39 Md. 115, is very much in point. There, the plaintiff proved the destruction by fire on the 28th of April, 1869, of a quantity of cordwood and growing timber on his land, contiguous to the railroad, proved that the fire had commenced on the track of the road in some dry grass, and had thence spread up the bank, through the bark, old stumps and litter, over the land condemned for defendant's road, and thence to the plaintiff's wood and timber; that everything was dry, and there was a high wind from the southwest; that from a distance south of the road he saw the smoke about twenty minutes after the freight train passed up, and that that locomotive "Annapolis" was the engine that was drawing the freight train on the morning of the fire. The witness then stated in reply to questions of plaintiff's counsel, which were objected to, that he had observed the engines of the defendant about that time, that within a week before he had seen them scattering large sparks in passing which were capable of setting fire to combustible articles along the road; and that about a week before, he put out a fire in the leaves caused by these sparks; but he could not say that he had ever seen any such sparks from the locomotive "Annapolis," which was the engine that was drawing the freight train the morning of the fire. The court said: "We have no doubt that this was competent and admissible evidence, both for the purpose of proving that the fire in question was occasioned by the locomotives, and as tending to show neg-

ligence on the part of the defendant in the construction and management of its engines. * * * The fact that the witness was unable to say that he had observed sparks, &c. from the engine 'Annapolis' is no valid objection to admitting this testimony. The declaration does not allege that the fire was caused by that particular engine, and the statement by the witness of his belief that it was the freight train which caused the fire did not preclude the plaintiff from arguing or the jury from finding that it was caused by some other locomotive. It appears by the testimony of the same witness that three trains had passed that morning before the fire, one of them a passanger train had passed up the road only a few minutes before the freight train, and may have caused the fire, although it was not discovered till after the 'Annapolis' had passed."

We are of the opinion that the court did not err in overruling the objections made by the defendant to the testimony of the plaintiff and his witnesses that other fires were set out by other engines of the defendant in the vicinity of plaintiff's trees at a recent time just before and after the fire of January 17, 1904, which burned and injured the said trees of plaintiff; and that the court did not err in refusing to confine the testimony to fires set out by the particular engine which drew the West Palm Beach and Miami train which passed Arch Creek at 10:40 on that morning; neither did the court err in refusing to give the instruction requested by defendant, nor in its charge given or its own motion, based upon the evidence of other fires.

II. The second and thirteenth assignments are argued and will be considered together, as follows: "There is a material variance between the declaration and the proof

in that the declaration seeks recovery for a fire alleged to have occurred on January 10, 1904, whereas the evidence as to the particular fire on which damages are predicated shows that such fire occurred on January 17, 1904." The defendant requested the court to instruct the jury as follows: "(12 The plaintiff seeks to recover, in his declaration or complaint, for a fire alleged to have been set out on or about the 10th, day of January, 1904, and cannot recover in this action for a fire originating one week later on Sunday January 17, 1904; so that if you find from the evidence that the fire occurred upon Sunday, January 17th, 1904, you verdict should be for the defendant." The refusal of the court to give this charge is assigned as error.

The evidence showed conclusively that the fire which destroyed and injured plaintiff's trees occurred on January 17th, 1904. There was no objection by defendant at the trial to the testimony of witnesses to the effect that the fire, for which recovery was sought, occurred on January 17th, 1904. The defendant did not claim at the trial that it was surprised by this variance in the time of the fire as alleged and proved, neither did the defendant claim or make any showing that it was misled to its prejudice in the preparation of its defense to the action by this variance, or request postponement of the trial of the case on account thereof. No objection to the form of statement of time in the declaration was made, either by demurrer or motion to make it more certain. In the case of West v. Blackshear, 20 Fla. 457, for damages for injuries to plaintiff's horse occasioned by the defendant's negligence the injury was alleged to have occurred "on or about the first day of December, A. D. 1882." The defendant demurred because the declaration did not allege the specific date

of the injury. The court said: "The specific date of the injury, as charged in the complaint is of no conseequence. The statement of the time of committing the injuries is seldom material; and in a case of this character, it may be proved to have been committed on a day anterior or subsequent to that stated in the declaration." The court did not err in refusing to give charge number 12, requested by defendant.

III. The third and fifteenth assignments of error, which have been argued and will be considered together, present the contention that "there is a material variance between the cause of action as set forth in the declaration and the cause of action which the evidence tends to establish, in that the declaration is upon a cause of action for negligently setting fire to the land of the plaintiff, while the proof shows that the fire was not set to the land of the plaintiff, but upon other land, and spread from such other land to the land of the plaintiff." Complaint is here made that the court erred in refusing to give the eleventh charge requested by the plaintiff as follows: "The plaintiff alleges in his declaration or complaint that the fire was communicated from one of the deefndants engines to the land of the plaintiff, and the plaintiff cannot recover upon a cause of action materially variant from that alleged. If therefore you believe from the evidence that the fire was not set directly upon the land of the plaintiff, but originated upon land of another party and spread to that of the plaintiff, you must find your verdict for the defendant." Plaintiff in error complains also that the court erred in charging the jury as follows: "If you believe from the evidence that the defendant's engine negligently set fire to grass along the line of the road, and that the fire materially spread and was communicated to plaintiff's grove

and so burned his trees, then you will find for the plaintiff and give him such sum in damages as under the evidence will be a fair compensation for the loss sustained by him."

There seems to be no doubt that the fire complained of was not communicated directly to the land of the plaintiff, but started along side of or near the rock road about one hundred feet south of the south line of plaintiff's property and spread thence upon the plaintiff's property and into and through his orange grove. The declaration alleged that "the defendant company, through its negligence communicated fire to the said lands of the plaintiff, by and from a certain locomotive engine, * * * which fire so communicated from said engine, spread over and upon the lands and premises of the plaintiff and burned up, consumed and injured a large quantity of orange and grape fruit trees and other trees belonging to the plaintiff and being upon the said land." There is no doubt that had the declaration charged and the testimony proved that the fire was negligently set out by the locomotive of defendant upon adjoining land of another and spread thence naturally to the land of the plaintiff and destroyed his trees the plaintiff would be entitled to recover. The fact that a fire set by defendant's locomotive passes through lands of another before reaching plaintiff's property does not render defendant's negligence the less proximate cause of the destruction of such property by fire. Louisville, N. A. & C. Ry. Co. v. Nitsche, 126 Ind. 229, 26 N. E. Rep. 51, 22 Am. St. Rep. 582, 9 L. R. A. 750; Small v. Chicago, R. I. & P. R. Co., 55 Iowa 582, 8 N. W. Rep. 437; Ingersol v. Stockbridge & P. R. R. Co., 8 Allen (Mass.) 438; O'Neill v. New York, O. & W. Ry. Co., 115 N. Y. 579, 22 N. E. Rep.

217, 5 L. R. A. 591; Kellogg v. Chicago & N. W. R. R. Co., 26 Wis. 223, S. C. 7 Am. Rep. 69.

In Jacksonville, T. & K. W. Ry. Co. v. Peninsular Land, Transp. & Manuf'g Co., 27 Fla. 1, 9 South. Rep. 661, this court appropriately quoted from Fent v. T. P. & W. Ry. Co., 59 Ill. 249, as follows: "If loss has been caused by the act, and it was under the circumstances a natural consequence which any reasonable person could have anticipated then the act is a proximate cause, whether the house burned was the first or the tenth, the latter being so situated that its destruction is a consequence reasonably to be anticipated from setting the first on fire." But it is contended that while the proof shows that the fire was not set to the land of the plaintiff but upon other land and spread from such other land to the land of the plaintiff, the declaration is upon a cause of action for negligently setting fire to the land of the plaintiff. By a careful reading of the declaration it will be seen that the cause of action therein declared upon is the negligent *communication* of fire to the land of the plaintiff by and from a locomotive of the defendant, which fire so communicated from said engine spread over and upon the lands of the plaintiff and burned up and injured his trees. The declaration does not charge that the fire was directly, or in the first instance, set to the land of the plaintiff by and from a locomotive of defendant. The declaration charges that the defendant company through its negligence *communicated* fire to the lands of the plaintiff by and from a locomotive engine of defendant, a charge which is not at variance with, but is sustained by, proof that the fire was communicated to the lands of the plaintiff, through other lands, by and from a locomotive engine of defendant. Because the fire was negligently set by the engine in the

first place upon the land of another and spread naturally
and without interruption thence to the land of the
plaintiff, it was none the less the same fire, it was none
the less communicated to the land of the plaintiff. The
same fire which was negligently set by the engine to the
land of another, was fed on its way by grass, stubble and
woodland, to the land of the plaintiff, and was thus com-
municated thereto by the said engine. Can it be logically
said that fire is not communicated by and from a locomo-
tive to the lands of the plaintiff because it is first set by
and from a locomotive to the lands of another and burns
thence naturally, and without interruption, to the lands
of the plaintiff? We think not. Is electricity any the less
communicated or transmitted to B. because the com-
munication is through A., who, with one hand touches
the electric battery and with the other hand touches B.?
We think not. In Perley v. Eastern Railroad Company,
98 Mass. 414, the court said: "But it (fire) was none the
less 'communicated' from the engine because the interme-
diate land belonged to other persons, nor because the dis-
tance was half a mile. If the land had all belonged to the
plaintiff, and had extended a mile, it would be difficult to
establish a line on his land, and to hold that the statute
gives him no remedy for the damages happening beyond
that line. Nor does the fact that there were several own-
ers make the damage to the plaintiff remote, in the sense
in which that term is used as contradistinguished from
direct and immediate. This was decided in Hart v. West-
ern R. R. Co., 13 Met. 99, S. C. 46 Am. Dec. 719. In that
case the fire was communicated from the engine to a car-
penters shop and destroyed it. There was a high wind
which wafted sparks from this shop while it was burning
over a street sixty feet, upon the plaintiff's dwelling house,

11—S C

and set it on fire. This was held to be a communication of the fire to the plaintiff's house within the statute." The statute referred to provided that "every corporation shall be responsible in damages to any person or corporation whose buildings or other property may be injured by fire communicated by its locomotivee engines," &c.

The following cases cited by plaintiff in error are not in conflict with the views here expressed: Chicago, St. L. & P. Ry. Co., v. Burger, 124 Ind. 275, 24 N. E. Rep. 981; Rost v. Mo. Pac. Ry. Co., 76 Tex. 168, 12 S. W. Rep. 1131; Pittsburg, Cincinnati & St. L. Ry. Co. v. Hixon, 79 Ind. 111; 9 Ency. Pl. & Pr. 3 and 4. The other case cited by plaintiff in error, Toledo, W. & W. R. Co. v. Morgan, 72 Ill. 155, holds that "when a declaration, in a suit against a railroad company for damages caused by burning wheat stacks, alleges that the *stacks were set on fire by sparks from a locomotive* belonging to the company, evidence that the stacks were destroyed by a fire which originated in another field, even though such fire was occasioned by sparks from the defendant's engine, will not sustain the averment in the declaration, and the plaintiff will not be entitled to recover." The court cites no authority in support of its holding. The distinction between the cause of action set up in the declaration and the proof thereof in the case cited, and that alleged in the declaration and the proof thereof in the instant case is apparent. But even were there a distinction without a difference in the two cases, the supreme court of California in the first headnote of the case of Butcher v. Vaca Valley & C. L. R. Co., (Cal.) 5 Pac. Rep. 359, held: "Where the complaint in action against a railroad company alleges the destruction of the plaintiff's property by fire kindled on his premises by sparks which proceeded directly from defendant's locomo-

tive to plaintiff's land, but the proof is that such property was destroyed by a fire kindled on the adjoining land by sparks from the same source, which fire moved onto plaintiff's land, this does not constitute a material variance between the proof and the allegation." See also the same case reported in 67 Cal. 518, 8 Pac. Rep. 174, where it is held that evidence is admissible to show that the fire commenced on land adjoining that of the plaintiff, and extended to his lands, under an allegation that the fire from defendants locomotive was suffered to escape, and did escape, and by reason thereof came upon the land of plaintiff. See also the case of Alabama G. S. R. Co. v. Johnston, 128 Ala. 283, 29 South. Rep. 771. These assignments are without merit.

IV. The fourth, eighth and twelfth assignments present the contention that "there is a material variance between the declaration and the proof, in that the proof tends to show that the spread of the fire into plaintiff's grove was occasioned by a new or intervening force, to wit: a change in the wind, and the court refused to instruct the jury as to this aspect of the evidence." This contention is based upon the refusal of the court to charge the jury, upon request of defendant, as follows: "(6) In order to prevail, the plaintiff must not only prove by a preponderance of evidence that an engine of the defendant set this fire, and that the engine was either in bad order or improperly managed at the time, but this must be shown to be the immediate cause of the injury complained of; and if it appears from the evidence to your satisfaction that there was an intervening cause and that the damage resulted through a sudden change of the wind, and which changed the direction of the spread of the fire and blew it into plaintiff's grove, and that the damage was made operative only

through and by means of this intervening cause, you should find your verdict for the defendant." "(7) If it appears to your satisfaction from the evidence that the spread of the fire into plaintiff's grove was occasioned by any new or intervening force, such as the sudden change of the wind, the defendant is not liable."

This court held in Jacksonville, T. & K. W. Ry. Co., v. Peninsular Land Transp. & Mfg. Co., 27 Fla. 1, 9 South. Repe. 661, "Proximate cause is that which naturally leads to or produces a given result; such result as might be expected directly and naturally to flow from such cause; such result as naturally suggests itself to the mind of any reasonable and prudent man as likely to flow out of the performance or non-performance of any act." The evidence shows that the wind was blowing when the fire was set, and continued to blow until the trees of plaintiff were burned and injured. There was not a great change even in the direction of the wind. When the fire was set the wind was blowing from the southwest and it changed to the south and blew the fire over into the pine woods toward the grove, according to the testimony of Mr. De-Winkler. Mr. Holdsclaw testified: "the wind was a little north of east that morning and was bringing the fire with it." It is not claimed that there was any sudden or great increase in the force of the wind. It is not claimed that the fire was caused to go onto the land of plaintiff by any sudden or unusual increase of the velocity of the wind, and the evidence does not show anything of that kind. The complaint is that there was a change in the *direction* of the wind, that this was an intervening cause, that the injury to plaintiff's grove was occasioned thereby, and plaintiff, therefore, can not recover. Conceding the fact that there was a change in the direction of the wind,

so as to blow the fire onto the land of the plaintiff and into his grove, we do not think the mere change in the direction of the wind was an intervening cause, so as to deprive the plaintiff of his right to recover. A change in the direction of the wind naturally suggests itself to the mind of any reasonable and prudent man, and the burning of the plaintiff's trees was a result as might be expected, directly and naturally to flow, by a change of the wind, from the negligent setting of the fire on the adjacent land. What is more changeable than the wind? "The wind bloweth where it listeth." The setting of the fire by and from the engine of defendant was the proximate cause of the injury to plaintiff's trees, and it was none the less the proximate cause by reason of the change in the direction of the wind, which was blowing at the time the fire was set and which continued to blow without any extraordinary increase in its velocity until the plaintiff's trees were burned.

In Northern Pac. R. Co. v. Lewis, 51 Fed. Rep. 658, the court held: "A simple change in the direction of the wind could not be considered as disturbing the unbroken connection between the negligence of the railroad company and the destruction of the wood, and it was in the province of the court to instruct the jury that it was not an intervening cause." In Indiana, I. & I. R. Co. v. Hawkins, 81 Ill. App. 570, at the time the fire was set the wind was blowing from the northeast to the southwest; but afterwards a sudden gust of wind sprang up from the northeast and carried the blaze across the track onto the land of the plaintiff. The court said: "It is a matter of common experience and observation in this western prairie country, that just such gusts of wind as this apparently was, are liable to spring up at any time, especially when

a fire is started in dry grass and weeds, such as accumulate in the fall of the year. Fire is a dangerous element, and one who sets it out upon the open prairie must be prepared to take care of it and prevent its escaping and doing damage to others, or be liable for the consequences." In the case of Louisville, N. A. & C. Ry. Co., v. Nitsche, 126 Ind. 229, 26 N. E. Rep. 51, the court said: "It is difficult, if not impossible, to find a substantial reason for holding that an ordinary wind is an independent intervening agency, for what occurs in the usual course of nature, and is not abnormal or extraordinary, cannot be regarded as an independent agency. * * * Extraordinary winds may justly be regarded as independent intervening agencies; but not so winds which are usual and prevail without disturbing the normal condition of nature. One who is himself without fault has, in justice and common fairness, a right to recover from one who has caused him loss by a tortious act, although an ordinary natural occurrence extended into the chain of events which culminated in the loss. It is in truth impossible to conceive a case wherein loss from fire can happen wholly independent of natural causes. Fire will not burn without air, and yet no one will be bold enough to assert that because this natural agency enters into every conflagration, therefore, the wrong doer is absolved from responsibility." To like effect see Union Pac. Ry. Co. v. McCollum, 2 Kan. App. 319, 43 Pac. Rep. 97. See also the case of Alabama G. S. R. Co., v. Johnston, 128 Ala. 283, 29 South. Rep. 771.

Let us examine the cases cited by counsel for plaintiff in error in support of these assignments of error. The case of Penn. Co. v. Whitlock, holding that defendant having negligently set his own building on fire, the flames were

carried by the wind to the plaintiff's building and consumed it, defendant was not liable, was expressly overruled in Chicago, St. L. & P. Co. v. Williams, 131 Ind. 30, 30 N. E. Rep. 696, and in Chicago & E. R. Co. v. Lesh, 158 Ind. 423, 63 N. E. Rep. 794 The case of Harrison v. Berkley, 1 Strob. (S. C.) 525, text 548, is not in conflict with our holding here, neither is the case of Jacksonville, T. & K. W. Ry. Co. v. Peninsular, Land Transp. & Mfg. Co., 27 Fla. 1, 9 South. Rep. 661; neither are the citations 2 Parsons on Contracts 180, or 3 Parsons 198. In the case of Marvin v. Chicago, M. &. St. P. Ry. Co., 79 Wis. 140, 47 N. W. Rep. 1123, the intervening cause was a *heavy* northeast wind, or *whirlwind* as the court said the witnesses called it, which is not the intervening cause contended for here —merely a change in the direction of the wind. In the case of Pennsylvania Railroad Co. v. Kerr, 62 Pa. St. 353, approving Ryan v. New York Central Railroad, 35 N. Y. 210, a warehouse, situated near the railroad track, was set on fire by sparks from one of the company's engines. The burning warehouse communicated fire to the hotel of defendant in error whereby it was consumed, and the court held that the railroad company was not liable for the destruction of the hotel, by reason of the injury being too remote. A similar holding was the case of Hoffman v. King, 160 N. Y. 618, 55 N. E. Rep. 401, though Parker, C. J. and Vann, J., dissented. In regard to this New York doctrine it is said in 1 Sutherland on Damages, (3rd ed.) Sec. 18, p. 52: "In New York the liability is much more restricted on the ground that the loss of the first building which is set on fire was to be anticipated; its destruction was the ordinary and natural result of its being fired. But this does not hold good as to subsequent buildings or other property which became ignited from the

first building; that the fire should spread and other build-ings be consumed is not a necessary or the usual result. * * * This restriction seems very arbitrary, and to be out of harmony with the general principle of the law governing proximate cause. It has not become the rule in New York without vigorous dissent from individual mem-bers of the Court of Appeals, extending to the latest cases cited." For a long list of cases from courts of many States in opposition to the New York holding on this question see pages 3570 to 3575, sections 1690, 1692 title Railroads, 41 Century Ed. American Digest. See also 27th headnote in Jacksonville, T. K. W. Ry. Co. v. Peninsular Land, Transp. & Mfg. Co., 27 Fla. 1, 9 South. Rep. 661. We will not follow the New York rule on this point. The only case cited by counsel, holding that a change of wind is an in-tervening cause that will prevent recovery, is Read v. Nichols, 118 N. Y. 224, 23 N. E. Rep 468, and from what we have already said on this subject, it is easy to see that we do not approve of this other New York rule.

V. The sixth assignment is based upon the refusal of the court to give the first charge requested by defendant as follows: "In order to recover damages, it is necessary for the plaintiff to prove to your satisfaction by a pre-ponderance of evidence, both that the fire was set by a lo-comotive of the defendant, and that this locomotive was either in bad order, or improperly managed." Counsel for plaintiff in error argues that the charge requested should have been given because it was in accordance with the doctrine laid down in Jacksonville, T. & K. W. Ry. Co. v. Peninsular Land, Transp. & Manuf'g Co., *supra*, which counsel quotes in his brief as follows: "The fact that no instrument has yet been found which entirely prevents the escape of sparks from locomotives, seems, when

coupled with the fact that the use of these engines is both lawful and eminently useful, a sound reason that the mere emission of sparks, or the simple setting out of fires thereby is not *per se* evidence of negligence, and will not throw upon the defendant the burden of removing such presumption." We find from the record that the court, upon request of defendant, gave this quotation from the J. T. & K. W. Ry. Co. case as an instruction to the jury, which would seem to be all that is contended for now. The court also charged the jury, of its own motion, as follows: "If you are not satisfied from a preponderance of the evidence that the fire emanated from the defendant's engine, or if being set by it, it was not done negligently, you will find for the defendant." The court also charged: "It is incumbent on the plaintiff to make out his case by a preponderance of testimony and the burden of proof is upon him to show, 1st, that the burning was done by defendant's engine; and, second, that it was done negligently." These charges, given by the court, sufficiently covered the charge refused by him, and he did not err in refusing to give charge number one. Besides this, section 3148 of the General Statutes of 1906, makes proof of damage by fire from defendant's locomotive *prima facie* evidence of negligence, and it devolves upon the company to make it appear that their agents have exercised all ordinary and reasonable care and diligence. The charge given by the court was too favorable to the defendant in putting the burden of proof of negligence upon the plaintiff, and the requested charge is erroneous in this respect, and should not have been given by the court.

VI. The eleventh assignment of error is based upon the refusal of the court to give the ninth charge requested by defendant as follows: "One who owns property alongside

of the railroad must know that trains are expected to run with regularity, and if there are special risks arising from no want of care in the proper equipment and management of engines and trains, those risks are not chargeable to the railroad, but are incident to the situation, and the extra care they demand devolves upon the other party, and the consequences of his not exercising it must fall upon him because the railroad is not in fault." It is argued that "the testimony of Holdsclaw and Carter tends to show the grove was not kept clear of inflammable materials, but was rough.     As the grove was situated along the railroad, the dangers incident to this situation, and not arising out of the company's negligence was assumed by the plaintiff. Defendant was entitled to have this explained to the jury as matter of law." The court gave the following charges to the jury, upon this phase of the evidence: "If you believe from the evidence that the plaintiff's grove was adjacent to the right of way of the defendant's railroad, and that he allowed it to get into an inflamable condition, so that without negligence on the part of the railroad company fire was communicated from one of its engines to the grove, the railroad company is not liable for damages." This charge was given upon request of the defendant.

In Jacksonville, T. & K. W. Ry. Co. v. Peninsular Land, Transp. & Mfg. Co., 27 Fla. 1, 9 South. Rep. 661, this court said: "That the plaintiff was not bound to keep guard against the negligence of the defendant, but has the right to enjoy his property in the ordinary manner, and that while he is charged with the duty of saving his property from destruction, if it can be saved, he is under no obligation to stand guard over it, continuously watching it to protect it from the *negligence* of the defendant, is a proposition of law too clearly correct to admit of any contro-

versy, and nothing in the authorities cited by appellant question it, and the same is true of the charge that the fact that the plaintiff's property was exposed to the reach of sparks of a locomotive engine is no defense to an action of this kind, and the plaintiff has the right to construct his buildings on any part of his property, and to enjoy the same without rendering himself liable to the negligence of the defendant." So much of the requested charge as enunciates the doctrine that those who establish themselves in the neighborhood of railroads must know that trains are expected to run upon them, and if there are risks arising from no want of care in the proper squipment and management of engines and trains, those risks are not chargeable to the railroad, but are incidental to the situation, states the law correctly as far as it goes, Gracy v. A. C. L. R. Co., decided at this term; but that part of the requested charge which asserts that "the extra care they demand devolves upon the other party, and the consequence of his not exercising it must fall upon him because of the railroad is not in fault," is misleading, confusing and argumentative. The requested charge declares that "the extra care they demand devolves upon the other party." The fruit growers, living alongside of the railroad track, have nothing to do with the care of the locomotive upon the track—they have no control over it. If the "extra care" spoken of refers to the care which the fruit grower must take of his grove and property alongside of the track, this instruction does not define the kind or degree of care devolving upon the fruit grower, and the instruction given by the court at the request of the plaintiff upon the care required of the plaintiff in this respect was sufficiently favorable to the defendant, though we do not commit ourselves to it as a correct statement of

the law. There was no error in the ruling of the court in refusing to give the requested charge.

Upon the eighteenth assignment of error, counsel for plaintiff in error says "the various errors discussed under the preceding assignments were presented to the court in the motion for a new trial;" and so it is unnecessary for us to add anything, upon this assignment, to what we have said already.

Finding no error, the judgment is affirmed.

TAYLOR and HOCKER, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.